1  ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
   anthony@counselonegroup.com
2  ALEXANDRIA R. KACHADOORIAN, Cal. Bar. No. 240601
   alexandria@counselonegroup.com
3  JUSTIN KACHADOORIAN, Cal. Bar No. 260356
   justin@counselonegroup.com
4  COUNSELONE, P.C.
   9301 Wilshire Boulevard, Suite 650
5  Beverly Hills, California 90210
   Telephone: (310) 277-9945
6  Facsimile: (424) 277-3727

7  Attorneys for Plaintiffs JOHN HUEBNER and IRMIN LANGTON,
   on behalf of themselves and others similarly situated
8

9               UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13  JOHN HUEBNER and IRMIN LANGTON,          Case No. 3:14-cv-04735-VC
    on behalf of themselves and others similarly
14  situated,                                [Assigned to the Honorable Vince Chhabria]

15                          Plaintiffs,      **[CLASS ACTION]**

16          v.                               **PLAINTIFFS' MOTION FOR CLASS
                                             CERTIFICATION; MEMORANDUM OF
17  RADARIS, LLC, a Massachusetts limited    POINTS AND AUTHORITIES IN
    liability company; RADARIS AMERICA,      SUPPORT THEREOF**
18  INC., a Delaware corporation; and EDGAR
    LOPIN, an individual,                    Hearing Date:  March 17, 2016
19                                           Time:          10:00 a.m.
                            Defendants.      Ctrm.:         4, 17th Floor
20

21

22

23

24

25

26

27

28

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs John Huebner and Irmin Langton ("Plaintiffs") respectfully move the Court for an Order:

(1) Certifying the following class and subclass:

**FCRA Class:** All persons in the United States who have had information relating to their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living compiled and displayed by Radaris from four years prior to the filing of the Complaint to the date judgment is entered.

**California Subclass:** All California residents whose names, photographs, or likenesses, or the names, photographs, or likenesses of their deceased personalities, Radaris has used on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without prior consent from the person or persons, from four years prior to the filing of the Complaint to the date judgment is entered.

The proposed class and subclass excludes counsel representing the class and subclass, governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

(2) Appointing Plaintiffs as Class Representatives.

(3) Appointing Plaintiffs' counsel, CounselOne, PC, as Class Counsel.

DATED: February 11, 2016                           COUNSELONE, PC


                                     By   _/s/ Anthony J. Orshansky_____
                                          Anthony J. Orshansky
                                          Alexandria R. Kachadoorian
                                          Justin Kachadoorian
                                          Attorneys for Plaintiffs and the Putative
                                          Class

# TABLE OF CONTENTS

**PAGE NO.**

I. INTRODUCTION............................................................................................ 1

II. PROCEDURAL POSTURE.............................................................................. 1

III. FACTUAL BACKGROUND ........................................................................... 2

    A.  Radaris Creates Consumer Reports Containing Sensitive Information for Purposes
        Expressly Governed by the FCRA............................................................ 2

    B.  Radaris Disclaims Compliance with Consumer Reporting Laws........................ 3

    C.  Radaris Posts the Names, Photographs, and Likenesses of California
        Residents without Their Consent. ............................................................ 4

    D.  Radaris's Reports Contain Dated, Incomplete, and Inaccurate Information
        without Any Means for Correction. .......................................................... 4

IV. ARGUMENT................................................................................................. 5

    A.  Legal Standard for Certification.............................................................. 5

    B.  The Proposed Class Definition ............................................................... 6

    C.  The Proposed Class Satisfies the Requirements of FRCP 23(a). ...................... 7

        1.  The Proposed Class Members Are Sufficiently Numerous. ...................... 7

        2.  Plaintiffs' Claims Present Common Questions of Law and Fact. ................ 7

        3.  The Named Plaintiffs' Claims Are Typical of the Class Claims.................. 9

        4.  The Named Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the
            Proposed Class. ......................................................................... 9

    D.  The Proposed Class Satisfies the Requirements of FRCP 23(b)(2)................. 10

    E.  The Proposed Class Satisfies the Requirements of FRCP 23(b)(3). ............... 11

        1.  Common Questions of Law or Fact Predominate ................................ 12

        2.  Class Treatment Is Superior to Other Alternatives. ............................. 13

    F.  The Court Should Approve Plaintiffs' Notice Plan.................................... 14

V. CONCLUSION............................................................................................ 16

i

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page No.**

*Aleobua v. United Wellness Cmty.*, LLC
   2014 WL 6085692……………………………………..……………… 6

*Amgen Inc. v. Connecticut Ret. Plans & Trust Fund*
   133 S. Ct. 1184 (2013) …………………………………………….. 12

*Ansoumana v. Gristede's Operating Corp.*
   201 F.R.D. 81 (S.D.N.Y. 2001)……………………………………….. 7

*Ballard v. Equifax Check Servs., Inc.*
   186 F.R.D. 589 (E.D. Cal. 1999)………………………………………. 5

*Berry v. Schulman*
   807 F.3d 600 (4th Cir. 2015) ……………………………………….11, 12

*Blackie v. Barrack*
   524 F.2d 891(9th Cir. 1975) ……………………………………… 12

*Boundas v. Abercrombie & Fitch Stores, Inc.*
   280 F.R.D. 408 (N.D. Ill. 2012) ……………………………………… 15

*Caridad v. Metro-North Commuter R.R.*
   191 F.3d 283 (2d Cir. 1999)………………………………………... 9

*Chakejian v. Equifax Info. Servs. LLC*
   256 F.R.D. 492 (E.D. Pa. 2009)……………………………………… 8

*Consol. Rail Corp. v. Town of Hyde Park*
   47 F.3d 473 (2d Cir. 1995)……………………………………………. 7

*Denney v. Deutsche Bank AG*
   443 F.3d 253 (2d Cir. 2006) ………………………………………. 9

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974) …………………………………….…………… 6

*General Telephone Co. of the Southwest v. Falcon*
   457 U.S.147 (1982)………………………………………….…………… 10

*Green v. Wolf Corp.*
   406 F.2d 291 (2d Cir. 196…………………………………………… 14

*In the Matter of Filiquarian Publishing, LLC, et al.*
   Federal Trade Commission, Case No. C-4401……………………….…………… 11

*In re Visa Checks/MasterMoney Antitrust Litig.*
   280 F.3d 124 (2d Cir. 2001) …….…………………………….…………… 12, 14

*Marisol A. v. Giuliani*
    126 F.3d 372 (2d Cir. 1997) ……………………………………..………….. 7, 9

*Molski v. Gleich*
    318 F.3d 937 (9th Cir. 2003) …………………………………………………… 5

*Murray v. GMAC Mortg. Corp.*
    434 F.3d 948 (7th Cir. 2006)..……………………………………………… 13

*Parkinson v. Freedom Fid. Mgmt.*, Inc.
    2012 WL72820 (E.D. Wash. Jan. 10, 2012)..…………………………………… 14

*Parkinson v. Freedom Fid. Mgmt., Inc.*
    2012 WL 5194955 (E.D. Wash. Oct. 19, 2012) ………………………………… 14

*Robidoux v. Celani*
    987 F.2d 931 (2d Cir. 1993) …………………………………….……………. 9

*Rosales-Martinez v. Palmer*
    753 F. 3d 890 (9th Cir. 2014) …………………………………………………… 11

*Schwartz v. Upper Deck Co.*
    183 F.R.D. 672 (S.D.Cal. 1999) ………………………………………………… 7

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*
    559 U.S. 393 (2010)……………………………………………………………… 5

*Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*
    271 F.R.D. 139 (N.D. Ill. 2010) ………………………………………..…… 15

*Siquic v. Star Forestry, LLC*
    2015 WL 5818263 (W.D. Va. Oct. 5, 2015). ………………………………… 6

*Skeway v. China Nat. Gas, Inc.*
    304 F.R.D. 467 (D. Del. 2014) …………………………………………..……… 5

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003). ………………………………………..………… 10

*TeleVideo Systems, Inc. v. Heidenthal*
    826 F2d 915 (9th Cir. 1987)……………………………………………………… 2

*Toure v. Cent. Parking Sys.*
    2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)…………………………………… 9

*Trief v. Dun & Bradstreet Corp.*
    144 F.R.D. 193 (S.D.N.Y. 1992) ……………………………………………… 7

*United States v. Instant Checkmate, Inc.*
    Case No. 14-CV-0675 (S.D. Cal. Mar. 24, 2014)……………………………… 11

*Wal-Mart Stores, Inc. v. Dukes*
    131 S.Ct. 2541 (2011). ………………………………………..…………… 12-13

iii.

*Whitaker v. Bennett Law, PLLC*
    2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) ……………………….………………… 5, 7

**STATUTES AND RULES**

Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681……..................................................... 1, 8

Federal Rules of Civil Procedure, Rule 23…………………………………………………… *passim*

California Consumer Credit Reporting Agencies Act (CCRAA),
California Civil Code § 1785……………………………………………………….………… 1, 8

California Investigative Consumer Reporting Agencies Act (ICRAA),
California Civil Code § 1786…………………………………………………………….....….. 1, 8

California Civil Code § 3344…………...………………….……………………………..…...… 1

**OTHER AUTHORITY**

Manual for Complex Litigation (4th ed. 2004)…………………………………………….. 15

Newberg on Class Actions (4th ed. 2002) …………………………...………..…………….. 6

iv.

Case No. 3:14-cv-04735-VC
Plaintiffs' Motion for Class Certification; Memorandum of Points and Authorities in Support Thereof

I.   **INTRODUCTION**

Like millions of people throughout the country, Plaintiffs John Huebner and Irmin Langton (together, "Plaintiffs") are victims of an increasingly prevalent trend among data aggregators to digitize large amounts of private information and sell it online to anyone with a credit card.

Defendants Radaris America, Inc., Radaris, LLC, and Edgar Lopin (collectively, "Radaris" or "Defendants") operate a website—www.radaris.com—that allows users to search for consumers based on a number of categories, including name, email address, and phone number.  In response to a search query, Radaris provides consumers with private, sensitive, and often erroneous information about virtually anyone in the United States.  Defendants' customers can obtain information on someone's age, sex, address, and even the number of persons in their household.  This information poses a threat to the personal safety of persons whose information appears on the website, where anyone in the world—including criminals—can obtain free information or purchase it with ease for a small price.  Defendants also compile employment-related information on persons, including job history, resumes, and professional reviews.  This information is incomplete or inaccurate and gives a false picture of the person, thus affecting that person's job prospects.

Plaintiffs brought this class action for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*.; the California Investigative Consumer Reporting Agencies Act (ICRAA), California Civil Code § 1786 *et seq*.; the California Consumer Credit Reporting Agencies Act (CCRAA), California Civil Code § 1785 *et seq.*; and California Civil Code § 3344, among other applicable laws, seeking damages, penalties, and equitable and injunctive relief on behalf of themselves and others similarly situated

Plaintiffs now move the Court to certify a class of all persons in the United States who have been affected by Defendants' unlawful practices and a subclass of California residents for violation of state-specific privacy laws.

II.   **PROCEDURAL POSTURE**

Plaintiffs filed this action on October 24, 2014.  [ECF No. 1.]  Plaintiffs served Radaris America, Inc., through personal service in November 2014, but it failed to file a responsive pleading, and on June 3, 2015, the clerk entered its default.  [ECF No. 22.]  Plaintiffs made substantial attempts

1

Case No. 3:14-cv-04735-VC
Plaintiffs' Motion for Class Certification; Memorandum of Points and Authorities in Support Thereof

to serve the other two named defendants, Radaris, LLC, and Edgar Lopin, by personal service and even had discussions with their putative attorneys regarding a potential resolution.  [ECF No. 27-1, ¶ 6.]  However, these defendants continued to dodge service, and Plaintiffs successfully moved this Court for an order authorizing service by publication.  [ECF Nos. 29, 32.]  In the end, Radaris, LLC and Lopin decided not to contest this lawsuit and have also defaulted.  The clerk entered their default on December 18, 2015.  [ECF No. 36.]

### III.    FACTUAL BACKGROUND

Upon default, the factual allegations of the complaint are taken as true.  *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F2d 915, 917 (9th Cir. 1987).  Therefore the following facts are taken from the Complaint.

### A.   Radaris Creates Consumer Reports Containing Sensitive Information for Purposes Expressly Governed by the FCRA.

Since at least 2011, Radaris has offered an online service allowing consumers to request background checks about any person.  (Compl. ¶ 16.)  In response to consumer requests, Radaris obtains information from various sources and assembles it into detailed reports that it provides to users.  (*Id.*)  Such reports contain numerous items of information, including but not limited to age, employer, current and previous addresses, phone numbers, email addresses, arrest and conviction records, the identity of relatives, property records, marriage and divorce records, and lawsuit records.  (*Id.* at ¶ 17.)  Some of this information is free, but consumers can obtain more detailed information for a fee, which varies depending on the level of detail desired, or by purchasing a membership.  (*Id.* at ¶ 18.)

In its marketing and advertising, Radaris has promoted the use of its reports as a factor in establishing a person's eligibility for employment or housing.  (*Id.* at ¶ 21.)  For example, Radaris advertises its service to persons and entities performing background checks specifically in making hiring decisions.   The Radaris website states that its service can be used "[t]o conduct basic background checks on business partners or house help"[1] so that "[u]sers get to know professional or personal reputations prior to establishing a new relationship."[2]  A blog maintained by the company

---

[1] http://radaris.com/page/about (last accessed May 27, 2014).
[2] http://radaris.com/page/inthenews?id=1#1 (last accessed May 27, 2014).

2

Case No. 3:14-cv-04735-VC
Plaintiffs' Motion for Class Certification; Memorandum of Points and Authorities in Support Thereof

contains numerous references to running background checks prior to making hiring decisions.[3]
Radaris also includes on each profile a section that includes comments on that person's professional
capacity.  (*Id.* at ¶ 21.)

Radaris has also marketed its service to provide debtor and tenant reports.[4]  (*Id.* at ¶ 22.)  For
example, Radaris's homepage promotes the service to "[r]eport any money owed to you or damages
made by others.  This information becomes public and other people are put on notice.  [The s]ystem
encourages debtors to pay-off debt and compensate damages.  On other hand, check if a person you
are about to deal with has clean records."[5]  (*Id.* at ¶ 23.)  Moreover, Radaris assembles or evaluates
information bearing consumers' character, general reputation, personal characteristics, and mode of
living.[6]  (*Id.* at ¶ 24.)  Because Defendants advertised that their reports could be used for
employment, credit, and tenant purposes, they expected or were aware that their reports would be
used for such purposes.  (*Id.*)

At the same time, Radaris advertises its reports for a variety of other, often ambiguous,
purposes, including "checking [someone's] reputation to see what others say about them," "manag[ing] risk when planning to deal with someone," "report[ing] money owed to you or damages
made by others," check[ing] if a person you are about to deal with has clean records," and "learn[ing]
about people in [your] neighborhood."[7]  Radaris promotes its service to enable users to "find a lost
friend or family member" and "to learn your online date's history."[8]  (Compl. ¶ 27.)

### B.  Radaris Disclaims Compliance with Consumer Reporting Laws.

Despite the stated uses of its reports, Radaris's website includes a disclaimer stating that the
company is not a credit reporting agency and does not offer consumer reports, and that "[n]one of
the information offered by Radaris is to be considered for purposes of determining any entity or
person's eligibility for credit, insurance, employment, housing, or for any other purposes covered
under the FCRA."  (Compl. ¶ 26; *see also* Kachadoorian Decl., Exs. J and K.)

---

[3]  *See*, *e.g.*, http://blog.radaris.com/2014/02/24/never-hire-liar-fake-references/ (last accessed May 27, 2014).
[4]  *See*, *e.g.*, blog.radaris.com/new-services-from-radaris-debtor-and-tenant-reports/ (last accessed May 27, 2014).
[5]  https://radaris.com/ (last accessed September 8, 2014).
[6]  *See*, *e.g.*, http://radaris.com/page/principles ("Check people's trustworthiness and reliability.  Check their background information and their reputation.") (last accessed May 27, 2014).
[7]  https://radaris.com/ (last accessed September 6, 2014).
[8]  https://radaris.com/page/about (last accessed September 6, 2014).

**C. Radaris Posts the Names, Photographs, and Likenesses of California Residents without Their Consent.**

Radaris also uses the names, photographs, and likenesses of California residents and deceased personalities for the purposes of advertising and selling background checks and subscriptions and also attracting third-party advertisers whose ads appear on profile pages.  (Compl. ¶ 28.)  Radaris likely removed some of this content from the original source but remained on the Radaris website long after.  (*Id.*)  Plaintiffs and upon information and belief other California residents did not give Radaris their consent to use their names, photographs, and likenesses for the purpose of advertising and selling background checks and subscriptions, and selling advertising space to third-party advertisers.  (*Id.* at ¶ 29.)

**D. Radaris's Reports Contain Dated, Incomplete, and Inaccurate Information without Any Means for Correction.**

The information in Defendants' reports is often inaccurate or incomplete.  (*Id.* at ¶ 19.)  For example, the report on Plaintiff Huebner includes an incorrect and/or outdated work history that presented an incomplete picture of his qualifications.  (*Id.*)  This was particularly harmful to Plaintiff Huebner because he was actively seeking employment throughout the time that Defendants displayed this inaccurate information about him and he has yet to find employment.  (*Id.*)  Moreover, the report contains inaccurate information about Plaintiff Huebner's name (incorrectly listing aliases), his relatives, and his place of residence.  (*Id.*)  Upon information and belief, Radaris's reports contain numerous inaccuracies which Plaintiffs and other consumers are unaware of because the company provides them with no procedure to review their files.  (*Id.*)  Defendants' website also includes photographs of consumers like Plaintiffs, including photographs that are not or are no longer publicly available online or elsewhere.  (*Id.*)

Worse still, Defendants' procedures for correcting or deleting incomplete or incorrect information are either ineffective or non-existent.  (*Id.* at ¶ 20.)  Plaintiffs, and each of them, like many other consumers, repeatedly tried to correct or remove inaccurate or incomplete information from Defendants' website via telephone and email, but to no avail.  (*Id.*)  They were unable to reach anyone at Radaris by telephone who could help them remove information and were placed on

4

interminable holds, and did not receive substantive responses to their emails. (*Id.*) Moreover, even when Plaintiffs and other consumers did supply information requested by Defendants as a precondition to correction, removal, or deletion, Defendants still did not remove their reports or inaccurate information and/or such information reappeared in their reports. (*Id.*) Plaintiffs, and each of them, were unable to obtain their complete reports and verify the accuracy of the complete contents thereof. (*Id.*)

Defendants have caused Plaintiffs and other consumers actual and/or imminent harm by creating, displaying, and marketing inaccurate information about them, including harm to Plaintiffs' employment prospects, which has resulted in the loss of money or property, as well as harm to their safety and well-being. (*Id.* at ¶ 30.) Plaintiff Huebner previously worked on government contracts, and Plaintiff Langton is a senior citizen. (*Id.*) Plaintiffs have suffered actual harm in the form of anxiety, stress, fear, apprehension, worry and/or concern for their safety, reputation, well-being, and employment or employment prospects resulting from the dissemination of the personal information described hereinabove. (*Id.*)

## IV.    ARGUMENT

### A.  Legal Standard for Certification

Rule 23 of the Federal Rules of Civil Procedure states, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 394 (2010). Class actions are appropriate in instances where, as here, individual damages are small. *See, e.g., Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'"). The decision regarding whether to certify a class is committed to the discretion of the district court. *See Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003).

Courts may consider a motion for class certification before entering a default judgment. *See Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145-L NLS, 2014 WL 5454398, at *1 (S.D. Cal. Oct.

5

27, 2014); *Aleobua v. United Wellness Cmty.*, LLC, No. 14-CV-12932, 2014 WL 6085692, at *1 (E.D. Mich. Nov. 13, 2014); *Skeway v. China Nat. Gas, Inc.*, 304 F.R.D. 467, 472 (D. Del. 2014); *Siquic v. Star Forestry, LLC*, No. 3:13CV00043, 2015 WL 5818263, at *10 (W.D. Va. Oct. 5, 2015). Indeed courts regularly certify classes where the defendants have defaulted. *Id.*

As on any certification motion, the Court should not consider merits of the action when deciding whether the class should be certified. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action … 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'"); *see also* 3 *Newberg on Class Actions* (4th ed. 2002) § 7.9.

**B.  The Proposed Class Definition**

Plaintiff requests that the Court certify the following class and subclass:

> **FCRA Class:**  All persons in the United States who have had information relating to their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living compiled and displayed by Radaris from four years prior to the filing of the Complaint to the date judgment is entered.

> **California Subclass:**  All California residents whose names, photographs, or likenesses, or the names, photographs, or likenesses of their deceased personalities, Radaris has used on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without prior consent from the person or persons, from four years prior to the filing of the Complaint to the date judgment is entered.

The proposed class and subclass excludes counsel representing the class and subclass, governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

The class as defined is sufficiently ascertainable because it provides the objective criteria

needed to determine the members of the class. *See Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D.Cal.1999).  Despite Defendants' failure to respond in this matter and the resulting lack of discoverable information, publicly available records—namely, the Radaris website—show a reasonable basis to believe that a class actually exists and that the class could be specifically determined through discoverable access to Defendants' data.  *See Whitaker*, *supra*, 2014 WL 5454398, at *3.

**C.  The Proposed Class Satisfies the Requirements of FRCP 23(a).**

**1.  The Proposed Class Members Are Sufficiently Numerous.**

Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Radaris itself boasts that it provides "profiles of nearly every person in the country." (Kachadoorian Decl., Ex. A.)  It also claims to *sell* 75,000 reports each year.  (*Id.*, Ex. B.)  Simply visit radaris.com and enter a name, and Defendants will return searches for literally hundreds if not thousands of persons with that name or similar names.  (*Id.* at ¶ 3.)  Moreover, Plaintiffs' counsel investigated this matter through Internet outreach since at least the winter of 2013, and as a result they have received dozens of emails and phone calls from persons throughout California and the country responding to the class definitions.  (*Id.*)  Therefore the numerosity requirement is satisfied.

**2.  Plaintiffs' Claims Present Common Questions of Law and Fact.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Courts should "liberally construe[] the commonality requirement," *see Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (internal citations omitted), which is satisfied by at least one common issue of law or fact.  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (same). "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Trief* at 144.

The claims asserted in this case raise a number of questions which can be decided on a common basis, including:

7

Case No. 3:14-cv-04735-VC
Plaintiffs' Motion for Class Certification; Memorandum of Points and Authorities in Support Thereof

(a)     Whether Radaris was a consumer reporting agency or investigative consumer reporting agency under the FCRA, ICRAA, and CCRAA during the class period;

(b)     Whether the data Defendants compiled, distributed, and/or sold to third-parties constitutes "consumer reports" or "investigative consumer reports" as defined by the FCRA, ICRAA, or CCRAA during the class period;

(c)     Whether Defendants had reasonable procedures (or, indeed, any procedures) to limit the furnishing of consumer reports for permissible purposes under these statutes;

(d)     Whether Defendants provided statutorily mandated notices to furnishers of information contained in their consumer reports and statutorily required notices to users of those reports;

(e)     Whether Defendants followed reasonable procedures to ensure the maximum possible accuracy of information in Radaris's consumer reports;

(f)     Whether Defendants failed to disclose information in their files to putative class members, failed to provide annual free file disclosures, and failed to provide a toll-free number for that purpose;

(g)     Whether Defendants failed to conduct reasonable investigation to determine the accuracy of information contained in consumer reports, as required under 15 U.S.C. § 1681i; and

(h)     Whether Defendants used the names, photographs, or likenesses, of Plaintiffs and other California consumers and deceased personalities without their consent.

Willfulness is also a common question.  To obtain the statutory damages sought under the FCRA, the proposed class must demonstrate that Defendants' conduct was willful. 15 U.S.C. § 1681n(a)(1). Because Defendants operate a single entity, i.e., Radaris, which acted consistent with its own procedures with respect to each member of the putative class, the answer to the question of whether Defendants' violations were willful can be determined on a classwide basis. *See Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) ("[T] inquiry is to [defendant's] state of mind in implementing its policies and procedures, not on the customer's particular interaction with the CRA…. To prove willfulness here, a consumer-by-consumer inquiry is not necessary.").

### 3.   The Named Plaintiffs' Claims Are Typical of the Class Claims.

Typicality under Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (citation omitted).  The "typicality requirement is satisfied ... irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  The facts of the named plaintiff's claim need not be identical to that of the putative class as long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) (citation omitted).

Plaintiff's claims are typical of those of the putative class because Plaintiffs' information and/or photos appeared on the Radaris website during the applicable class period without their consent and was erroneous.  (Compl. ¶¶ 19, 20, 29, 30, 38.)  Plaintiffs and each putative class member sustained similar injuries arising out of Defendants' conduct in violation of law.  (*Id.*)  The injuries of each member of the class were caused directly by Defendants' wrongful conduct.  (*Id.*)  In addition, the factual underpinning of Defendants' misconduct is common to all members of the putative class and represents a common thread of misconduct resulting in injury to all members of the Class.  (*Id.*)  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.  (*Id.*)

### 4.   The Named Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the Proposed Class.

In evaluating adequacy, the Court must consider whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

///

9

The Ninth Circuit has established a two-prong test for this requirement: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, neither Plaintiffs nor their counsel have any conflicts of interest with other class members and their interests are reasonably co-extensive. (Kachadoorian Decl. ¶ 20.) *See General Telephone Co. of the Southwest v. Falcon*, 457 U.S.147, 157-8, n.13 (1982). Plaintiffs do not have claims unique from other class members for which they seek augmented or additional recovery. Like other class members, they seek to bring Radaris into compliance with federal and state consumer-reporting and privacy laws. (Kachadoorian Decl. ¶ 20.) Moreover, Plaintiffs and their counsel have been committed to vigorously prosecuting this action. (*Id.* at ¶ 21.) Plaintiffs have engaged in many lengthy discussions with Plaintiffs' counsel about the case both pre- and post-filing and agreed to initiate a lawsuit whereas other class members have shied away from the responsibility and publicity resulting from a public filing. (*Id.*) Plaintiffs' counsel have substantial experience litigating class action lawsuits, including consumer privacy suits, and they have remained committed to the action despite Defendants' default and expenditure of time and money that will likely go uncompensated. (*Id.*)

**D. The Proposed Class Satisfies the Requirements of FRCP 23(b)(2).**

Class certification requires that Plaintiffs show that the requirements of Rule 23(a) and one of the three subsections of Rule 23(b) are met. Plaintiffs seek certification of their claims for injunctive relief under Rule 23(b)(2). Certification of this claim under Rule 23(b)(2) does not require a showing of predominance of common questions of law or fact over individualized ones but instead requires that Plaintiffs show that Defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs have made this showing. The principal injunctive relief Plaintiffs seek is compliance with state and federal consumer-reports and privacy laws. Defendants have refused to act on grounds applicable to the class by flouting these laws; indeed Defendants disclaim any

---

10

1    obligation to comply with the law.  (Compl. ¶ 26.)

2         In similar circumstances the Federal Trade Commission (FTC) has sought and obtained

3    injunctive relief against offending consumer reporting agencies.  For example, in 2013 the FTC filed

4    an administrative complaint against Filiquarian Publishing LLC, Choice Level LLC, and their CEO,

5    Joshua Linsk, alleging that they failed to ensure that the information they sold was accurate and

6    would be used only for legally permissible purposes and also failed to tell users of their criminal

7    record reports about their obligations under the FCRA, including the requirement to notify

8    consumers if adverse actions were taken against them based on a report.

9         As alleged in the FTC's complaint, both companies used disclaimers stating that they were

10   not FCRA compliant; that their products were not to be considered screening products for

11   employment, insurance, and credit screening; and that anyone who used their reports for such

12   purposes assumed sole responsibility for FCRA compliance.  (Kachadoorian Decl., Exs. G and H.)

13   Yet according to the FTC's complaint, these disclaimers are not enough to avoid liability under the

14   FCRA because the company advertised and expected that its reports could be used for employment

15   purposes.  (*Id.*)  The FTC's settlement order prohibits the respondents from future FCRA violations.

16   (*Id.*, Ex. H.)  Plaintiffs seek a similar result here.  *See also United States v. Instant Checkmate, Inc.*,

17   Case No. 14-CV-0675 (S.D. Cal. Mar. 24, 2014) (consent order requiring people search website to

18   comply with the FCRA and assessing a monetary penalty); *Berry v. Schulman*, 807 F.3d 600, 607

19   (4th Cir. 2015)(approving settlement granting consumers with "FCRA-like protections" on behalf

20   of a nationwide class of approximately 200 million persons).[9]

21   **E.  The Proposed Class Satisfies the Requirements of FRCP 23(b)(3).**

22        The present action also satisfies the requirements of Rule 23(b)(3) because common

23   questions of law or fact predominate over any purported individual questions, and a class action is

24   the superior method for the fair and efficient adjudication of this controversy.

25

26   [9] Plaintiffs respectfully request that the Court take judicial notice of the filings in *In the Matter of Filiquarian
     Publishing, LLC, et al.*, Case No. C-4401 and *US v. Instant Checkmate, Inc.*, Case No. 14-CV-0675 (*see*

27   Kachadoorian Decl., Exs. G-I) pursuant to Federal Rule of Evid. 201 because they are part of the court file
     in a government proceeding and are relevant to the issue of Defendants' liability as a credit reporting agency

28   under the FCRA and the appropriate remedy.  *See Rosales-Martinez v. Palmer*, 753 F. 3d 890, 894 (9th Cir.
     2014) ("It is well established that we may take judicial notice of judicial proceedings in other courts.").

### 1.   Common Questions of Law or Fact Predominate.

"Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). Questions that are common to the class predominate over individual questions where a plaintiff alleges a common course of conduct, omissions, and other wrongdoing that affected all the class members in the same or similar manner. *See Blackie v. Barrack*, 524 F.2d 891, 905-908 (9th Cir. 1975). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Visa Checks/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). This criterion is normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy. *Id.* at 136.

In this case common issues clearly predominate here because Defendants' conduct was uniform as to every member of the putative class. *See Berry v. Schulman*, 807 F.3d 600, 609-610 (4th Cir. 2015)(certifying class under the FCRA where central question was whether defendant failed to treat background reports as consumer reports under the FCRA). Defendants have disclaimed liability under state and federal consumer reporting and privacy laws and have made no effort to comply with them. (Compl. ¶ 26.) Therefore the central issues (namely, whether Radaris is a consumer reporting agency or investigative consumer reporting agency, and whether its background reports constitute consumer reports) are questions that can be answered with reference to Defendants' stated uses of the reports and categories of information contained in them, which are the same for every person in the United States. (Kachadoorian Decl., Ex. D.) *See Berry*, *supra*, 807 F.3d at 610 ("If Lexis unreasonably failed to treat Accurint reports as 'consumer reports' subject to the FCRA, then every class member would be entitled uniformly to the same amount of statutory damages, set by rote calculation.").

Although the actual contents of the reports differ from person to person, the fact that Defendants represent that the reports contain information bearing upon credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living render the determination of whether they are consumer reports answerable "in one stroke." *Wal-*

---

12

*Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

The answer to these central questions also renders the remaining common questions answerable on a class basis.  Because Defendants attempted to avoid compliance with the law, they had no procedures for maintaining the maximum accuracy of information, for providing free file disclosures to consumers, for investigating disputed information, and so forth.  Nor, as regards the California subclass, did Defendants provide any mechanism for putative class members to provide their consent for the use of their names and likenesses.

Rather, Defendants' entire business is avowedly based on collection and assembly of publicly available information through algorithms that require limited human oversight. (Kachadoorian Decl., Ex. C ("By capturing all publicly available personal information via a proprietary algorithm, Radaris indexes everything relevant about people and provides it for free in a convenient format, automatically filtering unimportant results often found when using traditional people search.").  That is the only way for business sketchy enough to successfully dodge service for the better part of a year to collect such a massive amount of information on "nearly every person in the country."  (*Id.*, Ex. A; *see also* Plaintiffs' Motions for Alternative Services, ECF Nos. 19, 27.)

Putative class members have repeatedly confirmed Defendants' total failure to take any action to comply with the law, let alone a policy or practice of doing so.  For well over two years now putative class members have reported that Defendants have collected and publicly displayed their private information on the Radaris website and ignored their attempts to remove or correct it. (Kachadoorian Decl. ¶ 10.)  Indeed Radaris disclaims any effort to do so.  (*Id.*, Ex. E ("No removals. … In the new digital world, once information becomes public it remains public forever.  The site does not remove information by users' requests[.]").)

Finally, individualized issues do not predominate with regard to damages because Plaintiffs seek statutory and punitive damages on behalf of themselves and the class under the FCRA.  *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006).

### 2.  Class Treatment Is Superior to Other Alternatives.

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication

13

1  of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth

2  a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action:

3  whether individual class members wish to bring, or have already brought, individual actions; the

4  desirability of concentrating the litigation of the claims in the particular forum; and the difficulties

5  of managing the case as a class action. Fed. R. Civ. P. 23(b)(3).  Denying class certification on

6  manageability grounds is "disfavored" by the courts and "should be the exception rather than the

7  rule." *In re Visa Check*, 280 F.3d at 140 (internal quotations omitted).

8       Class treatment is superior to alternatives because putative class members here have proven

9  to be very reluctant to step forward to vindicate their rights.  (Kachadoorian Decl. ¶ 12.)  Many of

10  them are shaken up that so much of their private information is publicly available and have no desire

11  to further inject themselves into the public eye.  (*Id.* at ¶ 12.)  Some class members have expressed

12  fear and apprehension about coming forward because doing so would potentially announce to ex-

13  spouses or lovers a source of information about their families and whereabouts.  (*Id.* at ¶ 12.)

14  Plaintiffs' counsel have discussed this case with several potential clients who expressed interest in

15  serving as class representatives but ultimately refrained from doing so out for fear of the

16  consequences.  (*Id.* at ¶ 12.)  Finally, because Defendants have defaulted, there are fewer if any

17  difficulties in managing this class action.  In particular, there will be no trial, only a motion for

18  default judgment requiring minimal evidentiary submissions, so this factor also militated in favor

19  of certification.

20  **F.  The Court Should Approve Plaintiffs' Notice Plan.**

21       Fed. R. Civ. P. 23(c)(2) requires the Court to direct notice to putative class members as

22  appropriate.  In actions similar to this one arising after the defendant's default, courts have refrained

23  from requiring notice before entering judgment.  For example, in *Parkinson v. Freedom Fid. Mgmt.*,

24  *Inc.*, No. CV-10-345-RHW, 2012 WL 72820 (E.D. Wash. Jan. 10, 2012), the defendant defaulted,

25  and the court certified the class.  *Id.* at *4.  Thereafter the court granted the plaintiffs' motion for a

26  default judgment and waited to rule on the form and manner of notice until the plaintiffs collected

27  on the judgment.  *See Parkinson v. Freedom Fid. Mgmt., Inc.*, No. 10-CV-0345-TOR, 2012 WL

28  5194955, at *6 (E.D. Wash. Oct. 19, 2012) ("[T]he Court directs Plaintiffs to refrain from

14

Case No. 3:14-cv-04735-VC
Plaintiffs' Motion for Class Certification; Memorandum of Points and Authorities in Support Thereof

distributing any funds collected on the judgment until the Court has had an opportunity to review and approve a proposed allocation among class counsel and the class (including the manner of notice and distribution to class members).").

Here as well, it remains doubtful whether Plaintiffs will ever collect on an eventual judgment; therefore the Court's determination about the allocation and distribution of any of the funds recovered from Defendants, along with notice to the class, should occur at a later time.

In the alternative, Plaintiffs propose that class notice to be made through publication on Plaintiffs' counsel's website and possibly banner advertisements on the Internet.  Notice in this manner is permissible, especially where, as here, the offending conduct has occurred entirely online and most, if not all, class members who have contacted Plaintiffs' counsel visited counsel's website.  *See, e.g.*, *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 147 (N.D. Ill. 2010) (suggesting posting of the class notice online along with other forms of providing notice); *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 418 (N.D. Ill. 2012) ("Notice also might be provided, among other places, on Abercrombie's website or at Abercrombie store locations."); Manual for Complex Litigation, supra, § 21.311, at 288 ("Posting notices on dedicated Internet sites, likely to be visited by class members and linked to more detailed certification information, is a useful supplement to individual notice, might be provided at a relatively low cost, and will become increasingly useful as the percentage of the population that regularly relies on the Internet for information increases.").

Plaintiffs will submit a more detailed notice plan including the content and form of notice after the entry of default judgment or, in the alternative, after the class is certified.

///

///

///

///

///

///

///

15

1

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed class and subclass, appoint Plaintiffs to serve as class representatives, and appoint Plaintiffs' counsel to serve as class counsel.

Respectfully submitted,

DATED:        February 11, 2016                COUNSELONE, PC

By    _/s/ Anthony J. Orshansky_____
Anthony J. Orshansky
Alexandria Kachadoorian
Justin Kachadoorian
Attorneys for Plaintiffs and the Putative
Class