1   ANTHONY J. ORSHANSKY, Cal. Bar No.199364
    anthony@counselonegroup.com
2   ALEXANDRIA R. KACHADOORIAN, SBN 240601
    alexandria@counselonegroup.com
3   JUSTIN KACHADOORIAN, Cal. Bar No. 260356
    justin@counselonegroup.com
4   COUNSELONE, P.C.
    9301 Wilshire Boulevard, Suite 650
5   Beverly Hills, California 90210
    Telephone: (310) 277-9945
6   Facsimile: (424) 277-3727

7   Attorneys for Plaintiffs JOHN HUEBNER and IRMIN
    LANGTON, on behalf of themselves and others similarly
8   situated

9

10                  UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13   JOHN HUEBNER and IRMIN LANGTON,        Case No. 3:14-cv-04735-VC
     on behalf of themselves and others similarly
14   situated,                              [Assigned to the Honorable Vince Chhabria]

15                    Plaintiffs,           **CLASS ACTION**

16         v.                               **DECLARATION OF JUSTIN
                                            KACHADOORIAN IN SUPPORT OF
17   RADARIS, LLC, a Massachusetts limited  MOTION FOR DEFAULT JUDGMENT**
     liability company; RADARIS AMERICA,
18   INC., a Delaware corporation; and EDGAR
     LOPIN, an individual,                  Hearing Date:   November 17, 2016
19                                          Hearing Time:   10:00 a.m.
                     Defendants.            Courtroom:      4
20                                          Judge:          Hon. Vince Chhabria

21

22

23

24

25

26

27

28

**Declaration of Justin Kachadoorian**

I, Justin Kachadoorian, declare:

1.    I am a competent adult, over the age of eighteen and counsel of record for plaintiffs John Huebner and Irmin Langton ("Plaintiffs") and the Class they represent in the above-captioned action.  The following is based upon my personal knowledge, and if called as a witness I could and would competently testify thereto.

2.    Defendants Radaris America, Inc., ("Radaris America"), Radaris, LLC ("Radaris") and Edgar Lopin ("Lopin") (together, "Defendants") claim on their website that the company sell 75,000 public records reports annually.  A true and correct copy of the website page setting forth the annual sales figure is attached hereto as Exhibit A.

3.    Defendants also claim on their website that they maintain professional profiles of 60 million persons in their database.  A true and correct copy of the website page setting forth this figure is attached hereto as Exhibit B.

4.    On April 12, 2016, the Court issued an order granting in part and denying in part Plaintiffs' motion for certification.  The Court subsequently approved an Internet based class notice plan (Dkt No. 43), and ordered that "Class Members shall have sixty (60) days from the date of publication of the class notice to submit opt-outs."  [Dkt. No. 44.]

5.    Plaintiffs carried out the class notice plan in accordance with the Court's Order. Pursuant to the Class Notice Plan, on June 16, 2016, Plaintiffs published Internet notice to the class at the websites radarisclassaction.com and radarisclassactionlawsuit.com and filed their Notice of Publication of Class Notice the same day.  [Dkt. No. 45.]

6.    The last day for class members to submit opt-out requests from the class expired on August 15, 2016.  [Dkt No. 44.]  Plaintiffs have received no opt-outs.

7.    Attached hereto as Exhibit C is a true and correct copy of a press release by the Federal Trade Commission titled "Background Screening Reports and the FCRA: Just Saying You're Not a Consumer Reporting Agency Isn't Enough," posted online on January 10, 2013.

8.    Attached hereto as Exhibit D is a true and correct copy of the complaint filed by the FTC in *In the Matter of Filiquarian Publishing, LLC, et al.*, Case No. C-4401, on or about April 13,

2013.

9.      Attached hereto as Exhibit E is a true and correct copy of the decision and order in *In the Matter of Filiquarian Publishing, LLC, et al.*, Case No. C-4401, filed on or about April 30, 2013.

10.      Attached hereto as Exhibit F is a true and correct copy of the consent order filed in *United States v. Instant Checkmate, Inc.*, Case No. 14-CV-0675 (S.D. Cal. Mar. 24, 2014), ECF No.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed September 29, 2016, at Los Angeles, California.

_____/s/ \_ *Justin Kachadoorian* \_\_
Justin Kachadoorian

# Exhibit A

PEOPLE SEARCH   BACKGROUND CHECK   PROFESSIONALS   PHONES   ADDRESSES   FAMILY SAFETY   RADAR   MORE ..          APPS          LOGIN

# Radaris America – Your Reliable Partner!

Radaris is a leader in the online people-search and background check space. We are constantly growing and always looking for new ways to introduce people to our products and services. As a result, we have established a very lucrative affiliate program to help us partner with quality sites in order to attract new customers to Radaris.

We are always recruiting new affiliate partners to connect through CJ.com where, we have industry leading offers that can relate to any vertical. Radaris offers a variety of different types of information including background checks, advanced people search reports, phone lookup reports, and professional reviews so we encourage you to join our affiliate program regardless of what sector you are in.

More details about our affiliate program can be found on CJ.com.

We look forward to working together.

If you have any questions, please feel free to contact us directly at, affiliate@radaris.com



Who uses Radaris background checks?
Home owners, Young mothers, Online daters, Families, and Genealogy buffs

Each year Radaris sells more than

# 75,000
reports
and the industry is growing

### Working Moms
**55**%
of mothers remain in the workforce - they all research new friends

### Online Daters
**40**million
online daters -- The smart ones run background checks.

### Genealogy Buffs
**84**million
people search for lost relatives each year -- They start with online reports

**Radaris background reports build the foundation of a better community and allow people to know each other better.**

Source:
FTC.gov
StatisticBrain.com









| People Search | People Directory | About | In the news | Share: |
|---|---|---|---|---|
| Background Check | Public Records | Principles | Blog | |
| Professionals Search | Ratings & Reviews | Terms of Service | Help center | |
| Reverse Phone | Property Records | Cancellation Policy | Affiliate Program | Follow Radaris: |
| Reverse Address | Email lookup | Privacy Policy | Contact | Google+ · Facebook · Twitter |
| Family Safety | Mobile Apps | | | |
| Radar | Regional sites | | | |

© 2015 Radaris

Exhibit B

a Centerex company

# Radaris in the news

For press inquiries, please
contact us at
press@radaris.com

## Radaris Launches the Trustoria Professional Directory to Revolutionize How Professionals are Found

*New professional directory bridges the gap between service marketplaces and closed professional networking sites*

**BOSTON** - September 8, 2015 - Radaris, the people search engine, today launched Trustoria.com, a comprehensive directory of US professionals including more than 60 million professional profiles. The directory is intended for both business and personal users who want to find all the relevant professionals across their town or across the country and know their professional history.

A unique feature to the Trustoria professional directory, when compared to other online professional directories and service marketplaces, is that it does not require membership or connection with the professional's profile for users to view the full record. There are no restrictions on who you can search for, how you search or what information you can find.

The Trustoria directory is also not limited to a small group of participating professionals, like some of its online service marketplace competitors. Trustoria contains a profile and records for every professional that chooses to have their information public anywhere online. Consumers can find all the possible service providers in one place and make their own decision on who to contact.

Search for professionals can be conducted by a variety of criteria including professional category, job title, skill keywords, company name, location or a specific individual's name. Each professional profile contains an individual's full name, location, job titles, school information and photograph to help verify the person's identity, when available.

"With Trustoria, businesses and consumers no longer need to rely on a small subset of participating service providers or be restricted by closed professional networks," said Chris Olive, CEO, Radaris America. "This directory is another major step toward more honest, transparent communities across the country and brings with it greater professional accountability," continued Olive.

**About Trustoria**
Trustoria is a comprehensive professional directory that includes every category of service, profession and business. It is the largest open collection of professional US profiles in the world.

Consumers and professionals alike use Trustoria when they need to find professionals across their town or across the country. The profiles allow people to know the full professional history of a person before doing business with them.

The Trustoria directory contains more than 60 million professional profiles.

**About Radaris**
Radaris is a comprehensive people search engine. We search the web for profile information and references, then combine it with national public data records to help you find the people you live and interact with across your community.

Radaris provides free public profiles along with premium background checks, contact reports and other information tools.

Radaris helps you get to know your community in a more honest, transparent way than ever before.

Contact: Radaris America, Inc.
    Press Relations
    press@radaris.com
    781-591-5270

© 2016 Radaris America, Inc. All rights reserved. All other trademarks are the property of their respective owners.

Click to collapse the article

## Radaris Releases New People Search and Background Check Apps

*Detailed public profiles, contact information, background check information, and reverse phone lookups available from anywhere*

**BOSTON** - March 10, 2015 - Radaris, the people search engine, has released a new Background Check app and a significant update to the Radaris People Search app that provides better mobile access to all the popular information services. Designed

Click to expand and read the article

# Radaris Launches Property Search and Address Directory to Help Find Owner and Resident Information

*New Reverse Address Lookup Gives Unparalleled Access to Resident Information for Every Street Address in the Country*

**BOSTON** - November 12, 2014 - Radaris, the people search engine, announced today the launch of a new directory service that provides all publicly available address information. The Radaris Property Search and Address Directory allows people to

Click to expand and read the article

# Radaris Releases New Site Design and Personal Profile Page Layout to Increase Visibility of Public Profiles

*Professional records, career history, and social network activity now contribute to a more honest online reputation*

**BOSTON** - September 30, 2014 - Radaris, a people search engine, has redesigned Radaris.com to give greater visibility to the real, public references of the people that affect our lives. The redesign features more prominent access to social network

Click to expand and read the article

# Radaris Launches New US Phone Directory to Help Identify Unknown Callers and Text Messages

*Reverse Phone Number Lookup and Directory Gives Unprecedented Access to Public Phone Number Records*

**BOSTON** - August 4, 2014 - Radaris, an intelligent people search engine, announced today the launch of a new service designed to give universal access to publicly available phone numbers. The Radaris US Phone Directory, combined with a

Click to expand and read the article

# Radaris Expands Access to Valuable People-Search Information via New, Convenient Tools

*New tools for people-search bring Radaris to the forefront of information delivery*

**BOSTON** - April 21, 2014 - Radaris, a universal people directory, is expanding access to its people-search technology, finding new ways to conveniently delivervaluable information in a variety of formats. Radaris is beta testingnew features,

Click to expand and read the article

# Radaris Delivers Next Evolution of People-Search Technology

*Public Information Indexing System and Streamlined Format Encourages Personal Connections, Finding Lost Friends and New Discoveries*

**BOSTON** - April 1, 2014 - Radaris, a universal people directory, has modernized and streamlined the way people find information and learn about each other. By capturing all publicly available personal information via a proprietary algorithm,

Click to expand and read the article





Exhibit C



Federal Trade Commission
BCP Business Center
business.ftc.gov

# Background screening reports and the FCRA: Just saying you're not a consumer reporting agency isn't enough

- By Tony Rodriguez and Jessica Lyon
- January 10, 2013 - 3:00pm

You know that phrase "If it quacks like a duck. . ."? It's applicable in the Fair Credit Reporting Act context, too. If a company meets the legal definition of a "consumer reporting agency," it's a consumer reporting agency. Including a disclaimer that says, in effect, "But we're not a CRA!" won't change that. That's one important takeaway tip from the FTC's settlement with Filiquarian Publishing, the agency's first FCRA case involving mobile apps.

Filiquarian advertised that people who bought its apps — available for 99 cents from app stores like iTunes and Google Android (now GooglePlay) — could conduct a "quick criminal background check for convictions" in specific states. Filiquarian also said that its apps could access hundreds of thousands of criminal records, and that users could conduct searches on potential employees as part of the hiring process. But according to the FTC, Filiquarian, owner Joshua Linsk, and Choice Level, LLC (a related company that provided the criminal records) made a major mistake: They failed to comply with the FCRA.

A company is a "consumer reporting agency" under the law if it assembles and evaluates consumer report information for the purpose of providing those reports to third parties. Reports include information that relate to a person's character, reputation, or personal characteristics. Typically, they're used — or are expected to be used — for employment, housing, credit, or the like. That's what triggers a company's obligations under the FCRA. But a business that uses consumer reports for employment purposes has to comply with the FCRA, too. Failing to implement any of the accuracy, dispute, or other safeguards required by the law could harm people's reputations and employment prospects.

So how does the FTC determine if a business has reason to believe that its information is being used for employment or other FCRA purposes? Lots of factors may be relevant, but one approach is to look at what the company says in its own ads. In Filiquarian's case, it specifically advertised that its reports could be used for hiring decisions on potential employees:

Are you hiring somebody and wanting to quickly find out if they have a record? Then Texas Criminal Record Search is the perfect application for you.

Here's an interesting point for disclaimer mavens. Filiquarian and Choice Level included statements in their apps and on their website that their background screening reports weren't to be considered screening products for insurance, employment, loans, and credit applications (among other things) and that they weren't FCRA-compliant. That disclaimer didn't cut much ice with the FTC, especially since it contradicted express representations in Filiquarian's ads urging people to use the reports to screen potential employees. Just *saying* that the info can't be used for FCRA purposes doesn't absolve a company from liability, concluded the FTC.

If you've been following mobile apps and the FCRA, you should feel a sense of déjà vu. Last year the FTC sent public warning letters to developers of six apps telling them:

If you have reason to believe that your reports are being used for employment or other FCRA purposes, you and your customers who are using the reports for such purposes must comply with the FCRA. This is true even if you have a disclaimer on your website indicating that your reports should not be used for employment or other FCRA purposes.

Sound familiar?

According to the FTC, what Filiquarian produced were "consumer reports" under the FCRA. Specifically, the complaint charged three key FCRA violations: failure to maintain reasonable procedures to verify who their users are and that the information would be used for a permissible purpose; failure to have procedures to ensure that the information they provided in consumer reports was accurate; and failure to provide notices to users and to those who furnished Filiquarian with information that was included in consumer reports.

The consent order contains provisions designed to ensure future compliance and requires the respondents to circulate the order to staffers with FCRA responsibilities.

What should businesses take from the case? The mobile app angle offers a 21st century twist, but the message remains the same: Companies offering background screening products for employment or other FCRA purposes — and the businesses that use them — have to stay in line with the law. Another tip: It's wise to pay attention to what the FTC says in warning letters to other companies.

For more information, visit the BCP Business Center's Credit Reporting page.

**4 Comments** >> Leave a Comment | Commenting Policy

Exhibit D

112 3195

## UNITED STATES OF AMERICA
## BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:  Edith Ramirez, Chairwoman
         Julie Brill
         Maureen K. Ohlhausen
         Joshua D. Wright

|  |  |
|---|---|
| In the Matter of          ) <br>                ) <br> FILIQUARIAN PUBLISHING, LLC; ) <br>                ) <br> CHOICE LEVEL, LLC; and    ) <br>                ) <br> JOSHUA LINSK,        ) <br>   individually and as an officer ) <br>   of the companies,      ) <br>   Respondents.       ) | DOCKET NO. C-4401 |

## COMPLAINT

The Federal Trade Commission ("FTC" or "Commission"), having reason to believe that Filiquarian Publishing, LLC, Choice Level, LLC, and Joshua Linsk, individually, and as an officer of the companies, have violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and it appearing to the Commission that this proceeding is in the public interest, alleges:

1. Respondent Filiquarian Publishing, LLC ("Filiquarian") is a Minnesota company with its principal office or place of business at 3722 Las Vegas Boulevard S. #2807E, Las Vegas, NV 89158.

2. Respondent Choice Level, LLC ("Choice Level") is a Minnesota company with its principal office or place of business at 3722 Las Vegas Boulevard S. #2807E, Las Vegas, NV 89158.

3. Respondent Joshua Linsk is the owner and sole officer of the corporate respondents. During all times material to this complaint, Joshua Linsk, individually or in concert with others, formulated, directed, or controlled the policies, acts, or practices of the companies. His principal office or place of business is the same as that of Filiquarian and Choice Level.

1

4.    The acts and practices of respondents as alleged in this complaint have been in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## RESPONDENTS' BUSINESS PRACTICES

5.    Since at least 2010, respondent Filiquarian has operated a series of mobile applications ("apps") that it advertised consumers could use to conduct a "quick criminal background check for convictions" in specific states.  Mobile apps offered by respondent Filiquarian include Alaska Criminal Records Search, Arizona Criminal Records Search, Arkansas Criminal Records Search, Connecticut Criminal Records Search, Indiana Criminal Records Search, Iowa Criminal Records Search, Minnesota Criminal Records Search, Orange County Criminal Records Search, Texas Criminal Records Search, Utah Criminal Records Search, Virginia Criminal Records Search, and Wisconsin Criminal Records Search.

6.    Respondent Filiquarian represented that the apps could access hundreds of thousands of criminal records, and that users could conduct a search on potential employees.  For example, respondent Filiquarian's mobile app, Texas Criminal Record Search, included the following representation:

> "Are you hiring somebody and wanting to quickly find out if they have a record? Then Texas Criminal Record Search is the perfect application for you."

Respondent Filiquarian's mobile apps for other states included identical language, other than the name of the app.

7.    Since at least 2010, respondent Filiquarian distributed and sold its mobile apps through two online stores, iTunes and Google Android store, now GooglePlay.  Consumers were charged $0.99 to download the app.  After downloading the app, users could conduct an unlimited number of searches for criminal record reports within a specific geographic location such as a state or county.

8.    As of May 2012, respondent Filiquarian sold at least 6,879 copies of its mobile apps offering criminal record reports.

9.    Respondent Choice Level provided the criminal records to respondent Filiquarian that were accessed by Filiquarian's mobile apps.  In light of the common ownership and control of respondents Choice Level and Filiquarian, and respondent Filiquarian's representations that its mobile apps could be used to access criminal records for hiring purposes, respondent Choice Level was aware that the criminal records it provided would be used for employment purposes.

2

10. Both respondents Filiquarian and Choice Level included a disclaimer in their "terms and conditions" stating that their respective products were not to be considered screening products for insurance, employment, loans, and credit applications, among other things. Respondents' disclaimer also stated that respondents were not compliant with the FCRA and any person using respondents' information for FCRA purposes "assumes sole responsibility for compliance with the Fair Credit Reporting Act and all/any other applicable laws."

## APPLICATION OF THE FCRA

11. Under Section 603(f) of the FCRA, 15 U.S.C. § 1681a(f), a company is a consumer reporting agency ("CRA") if it assembles or evaluates information on consumers for the purpose of furnishing "consumer reports" to third parties. According to Section 603(d) of the FCRA, 15 U.S.C. § 1681a(d)(1), consumer reports are communications that include information relating to an individual's character, reputation, or personal characteristics and are used or expected to be used for employment, housing, credit, or other similar purposes.

12. Respondents regularly assembled criminal records into reports that they provided to third parties in interstate commerce via mobile apps distributed by respondent Filiquarian. Despite the disclaimer discussed in Paragraph 10, respondent Filiquarian's mobile apps advertised that their reports, which were assembled from criminal records provided by Choice Level, could be used by customers for employment purposes, thus reflecting that respondents expected their reports to be used for employment purposes. Such reports are consumer reports as defined by the FCRA because they bear on a consumer's character, general reputation, personal characteristics, or mode of living and/or other attributes listed in Section 603(d) of the FCRA, 15 U.S.C. § 1681a(d)(1) and they were "used or expected to be used . . . in whole or in part" as a factor in determining a consumer's eligibility for employment.

13. In providing "consumer reports" respondents are now and have been a "consumer reporting agency" as that term is defined in Section 603(f) of the FCRA, 15 U.S.C. § 1681a(f).

## VIOLATIONS OF THE FCRA

14. Respondents did not comply with or maintain any procedures related to the FCRA, as described below.

15. Section 604(a) of the FCRA, 15 U.S.C. § 1681b(a), prohibits a CRA from furnishing consumer reports to persons who the consumer reporting agency does not have a reason to believe have a "permissible purpose." According to Section 604(a) of the FCRA, 15 U.S.C. § 1681b(a), permissible purposes include use in credit transactions, insurance underwriting, employment purposes, investment purposes, and other uses specified in the FCRA.

3

16.    Respondents have regularly furnished consumer reports to third parties without procedures to inquire into the purpose for which the user is buying the report. Thus, respondents have violated Section 604(a) of the FCRA, 15 U.S.C. § 1681b(a).

17.    Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a), requires every CRA to maintain reasonable procedures to limit the furnishing of consumer reports for permissible purposes. These procedures require that the CRA, prior to furnishing a user with a consumer report, require the prospective users of the information to identify themselves to the CRA, certify the purpose for which the information is sought, and certify that the information will be used for no other purpose. The CRA must make a reasonable effort to verify the identity of each new prospective user and the uses certified prior to furnishing such user a consumer report. In addition, Section 607(a) prohibits a CRA from furnishing a consumer report to any person it has reasonable grounds to believe will not use the consumer report for a permissible purpose.

18.    Respondents failed to maintain reasonable procedures to limit the furnishing of consumer reports for permissible purposes. For example, respondents failed to require that prospective users of their reports identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. By failing to limit the furnishing of reports to those who had a permissible purpose to use such a report, respondents have violated Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a).

19.    Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires CRAs to follow reasonable procedures to assure maximum possible accuracy of information concerning the individual about whom the report relates.

20.    Respondents maintained no procedures to assure maximum possible accuracy of information in the reports it provided. Accordingly, respondents have violated Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b).

21.    Section 607(d) of the FCRA, 15 U.S.C. § 1681e(d), requires CRAs to provide notices to all users of respondents' consumer reports; and to all persons who regularly furnish consumer report information to respondents.

22.    Respondents failed to provide such notices. Accordingly, respondents have violated Section 607(d) of the FCRA, 15 U.S.C. § 1681e(d).

23.   By their violations of Sections 604(a), 607(a), 607(b), and 607(d) of the FCRA, 15
      U.S.C. §§ 1681b(a), 1681e(a), 1681e(b), and 1681e(d), and pursuant to Section 621(a)
      thereof, 15 U.S.C. § 1681s, respondents have engaged in unfair and deceptive acts and
      practices in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C.
      § 45(a).

      **THEREFORE,** the Federal Trade Commission this thirtieth day of April, 2013, has
issued this complaint against respondents.

      By the Commission.


                                          Donald S. Clark
SEAL                                      Secretary

5

# Exhibit E

**112 3195**

### UNITED STATES OF AMERICA
### BEFORE THE FEDERAL TRADE COMMISSION

**COMMISSIONERS:**      **Edith Ramirez, Chairwoman**
                                 **Julie Brill**
                                 **Maureen K. Ohlhausen**
                                 **Joshua D. Wright**

|  |  |
|---|---|
| *In the Matter of*             )<br>                           )<br>**FILIQUARIAN PUBLISHING, LLC;**  )<br>                           )<br>**CHOICE LEVEL, LLC; and**     )<br>                           )<br>**JOSHUA LINSK,**               )<br>    **individually and as an officer** )<br>    **of the companies,**       )<br>    **Respondents.**          )<br>                           ) | **DECISION AND ORDER**<br><br><br>**DOCKET NO. C-4401** |

The Federal Trade Commission having initiated an investigation of certain acts and practices of the Respondents named in the caption hereof, and the Respondents having been furnished thereafter with a copy of a draft Complaint that the Bureau of Consumer Protection proposed to present to the Commission for its consideration and which, if issued by the Commission, would charge the Respondents with violation of the Federal Trade Commission Act, 15 U.S.C. § 45 *et seq*; and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.; and

The Respondents, their attorney, and counsel for the Commission having thereafter executed an Agreement Containing Consent Order ("Consent Agreement"), which includes: a statement by Respondents that they neither admit nor deny any of the allegations in the draft complaint, except as specifically stated in the Consent Agreement, and, only for purposes of this action, admit the facts necessary to establish jurisdiction; and waivers and other provisions as required by the Commission's Rules; and

The Commission having thereafter considered the matter and having determined that it has reason to believe that the Respondents have violated the Federal Trade Commission Act, and the Fair Credit Reporting Act and that a Complaint should issue stating its charges in that respect, and having thereupon accepted the executed Consent Agreement and placed such

Consent Agreement on the public record for a period of thirty (30) days for the receipt and consideration of public comments, and having duly considered the comments received from interested persons,  now in further conformity with the procedure described in Section 2.34 of its Rules, 16 C.F.R. § 2.34, the Commission hereby issues its Complaint, makes the following jurisdictional findings, and enters the following Order:

1.      Respondent Filiquarian Publishing, LLC ("Filiquarian") is a Minnesota company with its principal office or place of business at 3722 Las Vegas Boulevard S. #2807E, Las Vegas, NV 89158.

2.      Respondent Choice Level, LLC ("Choice Level") is a Minnesota company with its principal office or place of business at 3722 Las Vegas Boulevard S. #2807E, Las Vegas, NV 89158.

3.      Respondent Joshua Linsk is an officer of the corporate respondents.  During all times material to this complaint, Joshua Linsk, individually or in concert with others, formulated, directed, or controlled the policies, acts, or practices of the companies.  His principal office or place of business is the same as that of Filiquarian and Choice Level.

4.      The Federal Trade Commission has jurisdiction of the subject matter of this proceeding and of the Respondents, and the proceeding is in the public interest.

## ORDER

## DEFINITIONS

For purposes of this order, the following definitions shall apply:

1.      Unless otherwise specified, "respondents" shall mean Filiquarian Publishing, LLC, a corporation; Choice Level, LLC, a corporation; their successors and assigns, and officers; Joshua Linsk, individually and as an officer of the corporations; and each of the above's agents, representatives, and employees.

2.      The definitions set forth in the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a, *et seq.*, shall apply.

3.      "Clear and prominent" shall mean:

      i.      In textual communications (e.g., printed publications or words displayed on the screen of a computer), the required disclosures are unavoidable and of a type, size, and location sufficiently noticeable for an ordinary consumer to read and comprehend them, in print that contrasts with the background on which they appear;

      ii.     In communications disseminated orally or through audible means (e.g., radio or streaming audio), the required disclosures are delivered in a volume and cadence

sufficient for an ordinary consumer to hear and comprehend them;

iii.   In communications disseminated through video means (e.g., television or streaming video), the required disclosures are in writing in a form consistent with subparagraph (i) of this definition and shall appear on the screen for a duration sufficient for an ordinary consumer to read and comprehend them, and in the same language as the predominant language that is used in the communication; and

iv.   In all instances, the required disclosures are presented in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication of them.

4.   "Commerce" shall mean as defined in Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44.

5.   "Permissible purpose" shall mean the circumstances under which a consumer report may be furnished as described in Section 604 of the FCRA, 15 U.S.C. § 1681b.

## I.

**IT IS ORDERED** that respondents, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other business entity, in connection with the compilation, creation, sale, or dissemination of any consumer report, are hereby prohibited from:

A.   Furnishing a consumer report to any person which respondents do not have reason to believe has a permissible purpose under Section 604(a) of the FCRA, 15 U.S.C. § 1681b(a);

B.   Failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under Section 604(c) of the FCRA,15 U.S.C. § 1681b(a), as set forth in Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a);

C.   Failing to maintain reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom a consumer report relates, as required by Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b);

D.   Failing to provide the "Notice to Users of Consumer Reports: Obligations of Users Under the FCRA" ("User Notice") required by Section 607(d) of the FCRA, 15 U.S.C. § 1681e(d), to all users of respondents' consumer reports. *Provided, however*, that respondents may provide an electronic copy of the User Notice to a user if: (a) in the ordinary course of business, the user obtains consumer report information from respondents in electronic form, and (b) the notice is clear and prominent; and

E.    Failing to provide the Notice to Furnishers of Information: Obligations of Furnishers Under the FCRA ("Furnisher Notice") required by Section 607(d) of the FCRA, 15 U.S.C. § 1681e(d), to all furnishers of consumer report information to respondents. *Provided, however,* that respondents may provide an electronic copy of this notice to a furnisher if: (a) in the ordinary course of business, the furnisher provides consumer report information to respondents in electronic form, and (b) the notice is clear and prominent.

## II.

**IT IS FURTHER ORDERED** that, for five (5) years after the date of issuance of this order, respondents, and their successors and assigns, shall maintain and upon request make available to the Federal Trade Commission business records demonstrating compliance with the terms and provisions of this order, including but not limited to:

A.    Files containing the names, addresses, telephone numbers, and all certifications made by persons seeking to obtain consumer reports, including but not limited to reports containing criminal record information, from respondents, and all materials considered by respondents in connection with their verification of the identity of those persons and verification of the certifications made by those persons;

B.    Copies of all training materials and marketing materials that relate to respondents' provision of consumer reports as alleged in the complaint and respondents' compliance with the provisions of this order; and

C.    All records necessary to demonstrate full compliance with each provision of this order, including all submissions to the Commission.

## III.

**IT IS FURTHER ORDERED** that, for five (5) years after the date of issuance of this order, respondents, and their successors and assigns, shall deliver a copy of this order to: (1) all current and future principals, officers, and directors; and (2) all current and future managers, employees, agents and representatives who have responsibilities with respect to the subject matter of this order, and shall secure from each such person a signed and dated statement acknowledging receipt of the order, with any electronic signatures complying with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.* Respondents shall deliver this order to current personnel within thirty (30) days after the date of service of the order, and to future personnel within thirty (30) days after the person assumes such position or responsibilities.

## IV.

**IT IS FURTHER ORDERED** that respondents and their successors and assigns shall

notify the Commission at least thirty (30) days prior to any change in a respondent that may affect compliance obligations arising under this order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this order; the proposed filing of a bankruptcy petition; or a change in a respondent's name or address. *Provided, however*, that with respect to any proposed change about which a respondent learns less than thirty (30) days prior to the date such action is to take place, the respondent shall notify the Commission as soon as is practicable after obtaining such knowledge. Unless otherwise directed by a representative of the Commission in writing, all notices required by this Part shall be sent by overnight courier (not the U.S. Postal Service) to the Associate Director of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580, with the subject line: In the Matter of Filiquarian Publishing, LLC, FTC File Number 1123195. *Provided, however*, that, in lieu of overnight courier, notices may be sent by first-class mail, but only if an electronic version of such notices is contemporaneously sent to the Commission at DEbrief@ftc.gov.

## V.

**IT IS FURTHER ORDERED** that respondents and their successors and assigns shall, within sixty (60) days after the date of service of this order, file with the Commission a true and accurate report, in writing, setting forth in detail the manner and form in which respondents have complied with this order. Within ten (10) days of receipt of written notice from a representative of the Commission, respondents shall submit additional true and accurate written reports.

## VI.

This order will terminate on April 30, 2033, or twenty (20) years from the most recent date that the United States or the Commission files a complaint (with or without an accompanying consent decree) in federal court alleging any violation of the order, whichever comes later; *provided, however*, that the filing of such a complaint will not affect the duration of:

A. Any Part of this order that terminates in less than twenty (20) years;

B. This order's application to any respondent that is not named as a defendant in such complaint; and

C. This order if such complaint is filed after the order has terminated pursuant to this Part.

*Provided, further*, that if such complaint is dismissed or a federal court rules that respondents did not violate any provision of the order, and the dismissal or ruling is either not appealed or upheld on appeal, then the order will terminate according to this Part as though the complaint had never been filed, except that this order will not terminate between the date such complaint is filed and the later of the deadline for appealing such dismissal or ruling and the date such dismissal or ruling is upheld on appeal.

      By the Commission.


                         Donald S. Clark
                         Secretary

SEAL
ISSUED: April 30, 2013

Exhibit F

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>   v.<br><br>INSTANT CHECKMATE, INC.,<br><br>              Defendant. | Case No.: 14cv0675-H(JMA)<br><br><br>**CONSENT ORDER** |

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), filed its complaint for civil penalties, permanent injunction, and other equitable relief in this matter, alleging that Defendant, Instant Checkmate Inc. has ("Instant Checkmate") has engaged in violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 - 1681x, and in unfair or deceptive acts or practices in violation of Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a). Defendant has waived service of the summons and the Complaint. Plaintiff and Defendant, through counsel, stipulate to the entry of this Consent Order for civil penalties, permanent injunction, and other relief ("Order") to resolve all matters in dispute in this action between them.

//

//

//

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

### FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendant participated in deceptive or unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and in violations of the Fair Credit Reporting Act, 15 U.S.C. §§1681 - 1681x.

3.     Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendant admits to the facts necessary to establish jurisdiction.

4.     Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney's fees.

5.     Defendant and Plaintiff waive all rights to appeal or otherwise challenge or contest the validity of this Order.

### DEFINITIONS

For the purposes of this Order:

A.     "Clear and Prominent" shall mean:

1.     in textual communications (e.g., printed publications or words displayed on the screen of a computer), the required disclosures are of a type, size, and location sufficiently noticeable for an ordinary consumer to read and comprehend them, in print that contrasts with the background on which they appear;

2.     in communications disseminated orally or through audible means (e.g., radio or streaming audio), the required disclosures are delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend them;

3.     in communications disseminated through video means (e.g., television or streaming video), the required disclosures are in writing in a form consistent with subparagraph (1) of this definition and shall appear on the screen for a duration sufficient

2

1  for an ordinary consumer to read and comprehend them, and in the same language as the
2  predominant language that is used in the communication;

3          4.   in communications made through interactive media, such as the
4  Internet, online services, and software, the required disclosures are unavoidable and
5  presented in a form consistent with subparagraph (1) of this definition, in addition to any
6  audio or video presentation of them; and

7          5.   in all instances, the required disclosures are presented in an
8  understandable language and syntax, and with nothing contrary to, inconsistent with, or in
9  mitigation of the disclosures used in any communication of them.

10      B.   "Consumer Report" shall mean any written, oral, or other communication of
11  any information by a Consumer Reporting Agency bearing on a consumer's credit
12  worthiness, credit standing, credit capacity, character, general reputation, personal
13  characteristics, or mode of living which is used or expected to be used or collected in
14  whole or in part for the purpose of serving as a factor in establishing the consumer's
15  eligibility for:

16          1.   credit or insurance to be used primarily for personal, family, or
17  household purposes;

18          2.   employment purposes; or

19          3.   any other Permissible Purpose.

20      C.   "Consumer Reporting Agency" shall mean any Person which, for monetary
21  fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the
22  practice of assembling or evaluating consumer credit information or other information on
23  consumers for the purpose of furnishing Consumer Reports to third parties, and which
24  uses any means or facility of interstate commerce for the purpose of preparing or
25  furnishing Consumer Reports.

26      D.   "Defendant" means Instant Checkmate Inc. and its successors and assigns;

27  //

28  //

14cv0675-H(JMA)

1        E.    "Permissible Purpose" shall mean the circumstances under which a

2 Consumer Reporting Agency may furnish a Consumer Report, as set forth in Section 604

3 of the FCRA, 15 U.S.C. § 1681b, attached hereto as Attachment A to this Order.

4        F.    "Person" shall mean any individual, partnership, corporation, trust, estate,

5 cooperative, association, government or governmental subdivision or agency, or other

6 entity.

7                                 **ORDER**

8 I.      PROHIBITED BUSINESS ACTIVITIES

9    **IT IS ORDERED** that Defendant, Defendant's officers, agents, servants,

10 employees, and all other persons in active concert or participation with any of them, who

11 receive actual notice of this Order, whether acting directly or indirectly, in connection

12 with operating as a Consumer Reporting Agency, are hereby permanently restrained and

13 enjoined from:

14        A.    furnishing a Consumer Report to any Person who Defendant does not have

15 reason to believe has a Permissible Purpose to receive the Consumer Report;

16        B.    failing to maintain reasonable procedures designed to limit the furnishing of

17 Consumer Reports to Persons that have Permissible Purposes to receive them. Such

18 reasonable procedures shall require that: prospective users of the information identify

19 themselves, certify the purposes for which the information is sought, and certify that the

20 information will be used for no other purpose; and that Defendant make a reasonable

21 effort to verify the identity of a new prospective user and the uses certified by such

22 prospective user prior to furnishing such user a Consumer Report;

23        C.    failing to maintain reasonable procedures to assure the maximum possible

24 accuracy of the information concerning the individual about whom a Consumer Report

25 relates; and

26        D.    failing to provide a notice identical or substantially similar to the one

27 attached as Attachment B to this Order, to any person to whom a Consumer Report is

28 provided by Defendant, provided that Defendant may provide an electronic copy of the

notice to a user if: (a) in the ordinary course of business, the user obtains Consumer Report information from Defendant in electronic form, and (b) the notice is Clear and Prominent.

II.    MONETARY JUDGMENT FOR CIVIL PENALTY

**IT IS FURTHERED ORDERED** that:

A.    Judgment in the amount of Five Hundred Twenty-Five Thousand Dollars ($525,000) is hereby entered in favor of Plaintiff and against Defendant as a civil penalty for violations of the FCRA pursuant to Section 621(a) of the FCRA, 15 U.S.C. 1681s(a).

B.    Defendant is ordered to pay Plaintiff, by making payment to the Treasurer of the United States, Five Hundred Twenty-Five Thousand Dollars ($525,000), which, as Defendant stipulates, its undersigned counsel holds for no purpose other than payment to Plaintiff. Such payment must be made within seven (7) days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of Plaintiff.

III.    ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.    Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.    The facts as alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation filed by or on behalf of the Commission to enforce its rights to any payment or money judgment pursuant to this Order.

C.    Defendant acknowledges that its Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendant previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

//

//

5

14cv0675-H(JMA)

IV.   ORDER ACKNOWLEDGEMENTS

**IT IS FURTHER ORDERED** that Defendant obtain acknowledgements of receipt of this Order:

A.   Defendant, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.   For three (3) years after entry of this Order, Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled "Compliance Reporting." Delivery must occur within seven (7) days of entry of this Order for current personnel. To all others, delivery must occur before they assume their responsibilities. This deadline may be modified on motion to the Court for good cause shown.

C.   From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgement of receipt of this Order.

V.   COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant make timely submissions to the Commission:

A.   One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

1.   Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and Plaintiff may use to communicate with Defendant; (b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and internet addresses; (c) describe the activities of each business, including the goods and services offered, and the means of advertising, marketing and sales; (d) describe in detail whether and how Defendant is in compliance with each Section of this

14cv0675-H(JMA)

1   Order; and (e) provide a copy of each Order Acknowledgement obtained pursuant to this

2   Order, unless previously submitted to the Commission.

3          2.     For three (3) years following entry of this Order, Defendant must

4   submit a compliance notice, sworn under penalty of perjury, within 14 days of any change

5   in the following: (a) any designated point of contact; or (b) the structure of Defendant or

6   any entity that Defendant has any ownership interest in or controls directly or indirectly

7   that may affect compliance obligations arising under this Order, including: creation,

8   merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages

9   in any acts or practices subject to this Order. This deadline may be modified on motion to

10   the Court for good cause shown.

11          3.     Defendant must submit to the Commission notice of the filing of any

12   bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant

13   within 14 days of its filing.

14          4.     Any submission to the Commission required by this Order to be sworn

15   under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746,

16   such as by concluding: "I declare under penalty of perjury under the laws of the United

17   States of America that the foregoing is true and correct. Executed on: _____" and

18   supplying the date, signatory's full name, title (if applicable), and signature.

19          5.     Unless otherwise directed by a Commission representative in writing,

20   all submissions to the Commission pursuant to this Order must be emailed to

21   Debrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate

22   Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission,

23   600 Pennsylvania Avenue, N.W., Washington, D.C. 20580. The subject line must begin:

24   U.S. v. Instant Checkmate, File No. 1223221.

25   //

26   //

27   //

28

14cv0675-H(JMA)

## VI.   RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendant must create and maintain certain records for three (3) years after entry of the Order.  Specifically, Defendant must maintain the following records:

A.   Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.   Personnel records showing each employee's:  name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C.   All employee training materials;

D.   Documents sufficient to demonstrate compliance with each provision of this Order, including, but not limited to, copies of acknowledgments of receipt of this Order, required by the Section titled "Compliance Reporting";

E.   Complaints and refund requests, whether received directly or indirectly, and any responses;

F.   A copy of each unique advertisement or other marketing material;

G.   Documents sufficient to demonstrate Defendant's compliance with Section 604 of the FCRA;

H.   Documents sufficient to demonstrate Defendant's compliance with Section 607(a) of the FCRA, including but not limited to:

1.   the name, address, and telephone number of each Consumer Report user;

2.   each user's certification of the purposes for which the Consumer Report information is sought; and

3.   documents sufficient to demonstrate Defendant's efforts to verify the identity of each user and the uses certified by such user; and

//

//

8

14cv0675-H(JMA)

I.    Documents sufficient to demonstrate Defendant's compliance with Section 607(d) of the FCRA, including but not limited to:

    1.    a copy of each notice provided by Defendant to those who regularly furnish information to Defendant with respect to any consumer;

    2.    a copy of each notice provided by Defendant to those to whom a Consumer Report is provided by Defendant; and

    3.    the name, address, and  telephone number of each person to whom Defendant provided a notice described in Subsection I(1) and I(2).

J.    This deadline may be modified on motion to the Court for good cause shown.

VII.  COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that for the purpose of monitoring Defendant's compliance with this Order, including any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission or Plaintiff, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission and Plaintiff are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Fed. R. Civ. P. 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the Commission and Plaintiff are authorized to communicate directly with Defendant.   Defendant must permit representatives of the Commission and Plaintiff to interview any employee or other person affiliated with Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.    The Commission and Plaintiff may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the

9

14cv0675-H(JMA)

1  necessity of identification or prior notice. Nothing in this Order limits the Commission's

2  lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act,

3  15 U.S.C. §§ 49, 57b-1.

4       VIII. <u>RETENTION OF JURISDICTION</u>

5       **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for

6  purposes of construction, modification, and enforcement of this Order. The Court directs

7  the Clerk to close this case. The Court will re-open the case upon motion of a party for

8  good cause within three years of this order.

9       IX. <u>COSTS AND ATTORNEYS' FEES</u>

10      **IT IS FURTHER ORDERED** that each party shall bear its own costs and

11 attorneys' fees incurred in connection with this action.

12      X. <u>DEADLINES</u>

13      The deadlines set in this Order will only be modified on motion to the Court for

14 good cause shown.

15      **IT IS SO ORDERED.**

16      Dated: March 28, 2014

17      HON. MARILYN L. HUFF
     United States District Judge

18

19

20

21

22

23

24

25

26

27

28

14cv0675-H(JMA)