ANTHONY J. ORSHANSKY, SBN 199364
anthony@counselonegroup.com
ALEXANDRIA R. KACHADOORIAN, SBN 240601
alexandria@counselonegroup.com
JUSTIN KACHADOORIAN, SBN 260356
justin@counselonegroup.com
COUNSELONE, P.C.
9301 Wilshire Boulevard, Suite 650
Beverly Hills, California 90210
Telephone: (310) 277-9945
Facsimile: (424) 277-3727

Attorneys for Plaintiffs JOHN HUEBNER and IRMIN
LANGTON, on behalf of themselves and others similarly
situated

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HUEBNER and IRMIN LANGTON, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RADARIS, LLC, a Massachusetts limited liability company; RADARIS AMERICA, INC., a Delaware corporation; and EDGAR LOPIN, an individual,<br><br>Defendants. | Case No. 3:14-cv-04735-VC<br><br>[Assigned to the Honorable Vince Chhabria]<br><br>**[CLASS ACTION]**<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER RE FURTHER BRIEFING** |

# TABLE OF CONTENTS

**PAGE NO.**

1.  What authority exists for the form of injunctive relief sought and the intended mechanisms of enforcing it?……………………..…………….....................................................................................1

2.  Whether injunctive relief is available in a private FCRA action, and how the plaintiffs would frame their request for injunctive relief under California law if they're unsuccessful under the FCRA.  *See, e.g., Hogan v. PMI Mortg. Ins. Co*., No. C 05-3851 PJH, 2006 WL 1310461, at \*10 (N.D. Cal. May 12, 2006); *Howard v. Blue Ridge Bank,* 371 F. Supp. 2d 1139, 1145 (N.D. Cal. 2005); *see also Washington v. CSC Credit Servs. Inc.,* 199 F.3d 263, 268 (5th Cir. 2000)..……………….…………….………………………………………………....….4

3.  Whether any of the California-law claims or remedies are preempted by the FCRA.  *See, e.g., Ramirez v. Trans Union, LLC,* 899 F. Supp. 2d 941, 947 (N.D. Cal. 2012)…………………...10

    A.  Injunctive Relief Is Available under California Law……………………………….…...10

    B.  Plaintiffs' FCRA Claims Do Not Preclude Relief under the CCRAA and ICRAA…......11

    C.  The FCRA's Preemption Provision Does Not Preclude the Relief Requested Here…......14

4.  Whether either the CCRAA or the ICRAA permit an overlapping action under the FCRA, and how the plaintiffs would frame their request for injunctive relief in the event of an adverse ruling.  *See Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-CV-02588-JCS, 2015 WL 5782352, at \*7 n.7 (N.D. Cal. Oct. 4, 2015)……………………………………………………………....…16

5.  Whether the plaintiffs have demonstrated the kind of concrete injury necessary for Article III standing, particularly as to the section 1681b and section 1681e claims.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549-50 (2016), *as revised* (May 24, 2016)…………………...….17

6.  Whether the plaintiffs have adequately pled their statutory and common-law misappropriation-of-likeness claims as required under *Eitel*. See Compl. (Dkt. 1) at ¶¶ 19, 28-30, 110, 111; *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986)..………………................................................…24

Conclusion………………………………………………………....…….........................……27

1
2

# TABLE OF AUTHORITIES

3

## CASES                                                                 Page No.

4
5

*ABS-CBN Corp. v. Ashby*
  D. Ore. Case No. 3:14-cv-1285 (Aug. 8, 2014)…………………………………………2, 9, 10

6

*Adams v. Berger Chevrolet, Inc.*
  2001 WL 533811 (W.D. Mich. May 7, 2001)……………………………………………..5

7
8

*Alemite Mfg. Corp. v. Staff*
  42 F.2d 832 (2d Cir.1930)…………………………………………………………..…..1

9

*Alvarez v. Chevron Corp.*
  656 F.3d 925 (9th Cir. 2011)……………………………………………….…………13

10
11

*Am. Online, Inc. v. Aol.Org*
  259 F. Supp. 2d 449 (E.D. Va. 2003)……………………………………….......3, 10

12

*Andrews v. Trans Union Corp.*
  7 F. Supp. 2d 1056 (C.D. Cal. 1998)…………………………………….…………4, 6, 9

13

*Arista Records, LLC v. Tkach*
  122 F. Supp. 3d 32 (S.D.N.Y. 2015)……………………………………………………1, 2

14
15

*Beaudry v. TeleCheck Servs., Inc.*
  579 F.3d 702 (6th Cir. 2009)……………………………………………………......4, 5

16
17

*Benton v. Clarity Services, Inc.*
  2017 WL 345583 (N.D. Cal. Jan. 24, 2017)……………………………………………..19

18

*Berry v. Schulman*
  807 F.3d 600 (4th Cir. 2015) ………………………………………………….....9

19
20

*Bowse v. Portfolio Recovery Associates, LLC*
  2016 WL 6476545 (N.D. Ill. 2016)…………………………………………….…………...23

21

*Burke v. Fed. Nat'l Mortg. Ass'n*
  2016 WL 4249496 (E.D. Va. Aug. 9, 2016)……………………………..……..22, 23

22
23

*Burnthorne-Martinez v. Sephora USA, Inc.*
  2016 WL 6892721 (N.D. Cal., Nov. 23, 2016)……………………………………….....12, 17

24

*Califano v. Yamasaki*
  442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)……………………………………4, 6

25
26

*Carvalho v. Equifax Info. Services, LLC*
  629 F.3d 876 (9th Cir. 2010)……………………………………………………...13

27

*C.D.S., Inc. v. Bradley Zetler, cDs, LLC*
  2016 WL 7668473 (S.D.N.Y. June 29, 2016)…………………………………………..3

28

ii.

*Church v. Accretive Health, Inc.*
654 Fed. App'x 990 (11th Cir. 2016)……………………………………………………22

*Cisneros v. U.D. Registry, Inc.*
39 Cal. App. 4th 548 (1995)………………………………………………………passim

*Coleman v. Kohl's Dep't Stores, Inc.*
2015 WL 5782352 (N.D. Cal. Oct. 5, 2015)………………………………………12, 14, 16, 17

*Comedy III Productions v. Gary Saderup, Inc.*
25 Cal. 4th 387 (2001)……………………………………………………………………26

*Crabill v. Trans Union, LLC*
259 F.3d 662 (7th Cir. 2001)………………………………………………………….………6

*Crossfit, Inc. v. Jenkins*
69 F. Supp. 3d 1088 (D. Colo. 2014)……………………………………………………10

*Dickens v. GC Services Limited Partnership*
2016 WL 3917530 (M.D. Fla. July 20, 2016)…………………………………….……...23

*Drew v. Equifax Info. Servs., LLC*
2009 WL 595459 (N.D. Cal. Mar. 5, 2009)………………………………………12, 14, 16, 17

*Eastwood v. Superior Court*
149 Cal. App. 3d 409 (1983)………………………………………………………….………25

*Eisen v. Carlisle & Jacquelin*
417 U. S. 156 (1974)……………………………………………………………………...8

*Eitel v. McCool*
782 F.2d 1470 (9th Cir. 1986)………………………………………………………….…...24

*Engelbrecht v. Experian Info. Servs., Inc.*
2012 WL 10424896 (C.D. Cal. Nov. 6, 2012)……………………………….…………...5, 6

*Fireman's Fund Ins. Co. v. North Pacific Ins. Co.*
2011 WL 3510936 (9th Cir. 2011)…………………………………………………………...13

*Firneno v. Nationwide Mktg. Services, Inc.*
2017 WL 85831 (E.D. Mich. Jan. 10, 2017)…………………………………………...19

*Globalsantafe Corp. v. Globalsantafe.Com*
250 F. Supp. 2d 610 (E.D. Va. 2003)………………………………………………….……...3

*Gorman v. Wolpoff & Abramson, LLP*
584 F.3d 1147 (9th Cir. 2009)…………………………………………………….……...11

*Graham v. Pyramid Healthcare Solns., Inc.*
2016 WL 6248309 (M.D. Fla. Oct. 26, 2016)……………………………………….……...22

*Green v. RentGrow, Inc.*
2016 WL 7018564 (E.D. Va. Nov. 10, 2016)………………………………………...20

iii.

*Greenway v. Info. Dynamics, Ltd.*
    399 F. Supp. 1092 (D. Ariz. 1974)…………………………………………….………4, 6, 9

*Griffin v. Bank of Am., N.A.*
    2016 WL 7487724 (N.D. Ohio Dec. 28, 2016)……………………………………………20

*Guillen v. Bank of Am. Corp.*
    2011 WL 4071996 (N.D. Cal. Aug. 31, 2011)…………………………………………..12, 13, 17

*Guimond v. Trans Union Credit Info. Co*
    45 F.3d 1329 (9th Cir. 1995)……………………………………………………………....4, 5

*Hawkins v. S2Verify*
    2016 WL 3999458 (N.D. Cal. July 26, 2016)…………………………………………….....23

*Hernandez v. Towne Park*
    2012 WL 2373372 (C.D. Cal. June 22, 2012)……………………………………..………..13

*Hogan v. PMI Mortg. Ins. Co.*
    2006 WL 1310461 (N.D. Cal. May 12, 2006)……………………………………………4, 6, 8

*Howard v. Blue Ridge Bank*
    371 F. Supp. 2d 1139 (N.D. Cal. 2005)…………………………………………….…..4, 7, 8

*In re Nickelodeon Consumer Privacy Litigation*
    827 F. 3d 262 (3d Cir. 2016)………………………………………………………………22, 24

*Jones v. Federation Fin. Reserve Corp.*
    144 F.3d 961 (6th Cir. 1998)……………………………………………………………....8

*Lane v. Bayview Loan Servicing, LLC*
    2016 WL 3671467 (N.D. Ill. July 11, 2016)………………………………………………..22

*Lions Gate Films Inc. v. Does*
    2014 WL 12580399 (C.D. Cal. Aug. 4, 2014)……………………………………………..2

*Lugosi v. Universal Pictures*
    25 Cal.3d 813 (1979)……………………………………………………………………....26

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)……………………………………………………………….…………...18

*Montana v. San Jose Mercury News, Inc.*
    34 Cal. App. 4th 790 (1995)……………………………………………………………….26

*Moody v. Ascenda USA, Inc.*
    2016 WL 5900216 (S.D. Fla. Oct. 5, 2016)…………………………………………….21, 23

*Munson v. Del Taco, Inc.*
    522 F.3d 997 (9th Cir. 2008)……………………………………………………….………12

*Natale v. TRW, Inc.*
    1999 WL 179678 (N.D. Cal., March 30, 1999)…………………………………………….6

iv.

*Owen v. United States*
    713 F. 2d 1461 (9th Cir. 1983)………………………………………………..……..12

*Plata v. Schwarzenegger*
    603 F.3d 1088 (9th Cir. 2010)…………………………………………………………..5

*Ramirez v. Trans Union, LLC*
    899 F.Supp.2d 941 (N.D. Cal. 2012)……………………………………..…………passim

*Regal Knitwear Co. v. Nat'l Labor Relations Board*
    324 U.S. 9 (1945)………………………………………………………………………..1

*Rosales-Martinez v. Palmer*
    753 F. 3d 890 (9th Cir. 2014) ………………………………………….………..……...2

*S. Cent. Bell Tel. Co. Constant*
    304 F. Supp. 732 (E.D. La. 1969)……………………………………………..………..2

*Spokeo, Inc. v. Robins*
    136 S. Ct. 1540 (2016)………………………………………………….…………..passim

*Syed v. M-I, LLC*
    2017 WL 242559 (9th Cir. Jan. 20, 2017)………………………...…………..20, 21, 23

*The North Face Apparel Corp. v. Fujian Sharing Imp, & Exp. Ltd. Co.*
    No. 10 Civ. 1630(AKH), slip op. 4-6 (S.D.N.Y. June 24, 2011)………………………..2

*Thomas v. FTS USA, LLC*
    193 F. Supp. 3d 623 (E.D. Va. 2016)……………………….……………….………...18, 21, 23

*U.S. v. Sherwood*
    312 U.S. 584 (1941)………………………………………………………………..7

*Valentine v. First Advantage Saferent, Inc.*
    2009 WL 4349694 (C.D. Cal. Nov. 23, 2009)……………………………………….4

*Van Patten v. Vertical Fitness Group, LLC*
    2017 WL 460663 (9th Cir. Jan. 30, 2017)……………………………………….…...19

*Washington v. CSC Credit Servs. Inc.*
    199 F.3d 263 (5th Cir. 2000)……………………………………………..……..4, 5, 7, 8

*Wenger v. Trans Union Corp.*
    1995 U.S. Dist. LEXIS 22214 (C.D. Ca. 1995)……………………………………..6, 8

*Witt v. Corelogic Saferent, LLC*
    2016 WL 4424955 (E.D. Va. Aug. 18, 2016)……………………………………..20

## STATUTES AND RULES

California Business and Professions Code § 17204…………………………….…………9

California Civil Code § 1785, *et seq.* ("CCRAA")……………………………….……passim

v.

California Civil Code § 1786, *et seq.* ("ICRAA")……………………………………….……....passim

California Civil Code § 3344…………...…………………….………….....……....…...25, 26, 27

Federal Rules of Civil Procedure, Rule 23……………………………………………....……8, 9

Federal Rules of Civil Procedure, Rule 65……………………………………………..…….. 1

7 U.S.C. § 227………...........................................................................................7

15 U.S.C. § 44………...........................................................................................7

15 U.S.C. § 45………...........................................................................................7

15 U.S.C. § 57………...........................................................................................7

15 U.S.C. § 1681, *et seq.* ("FCRA")………...........................................................passim

vi.

Plaintiffs John Huebner and Irmin Langton (together, "Plaintiffs") hereby respond to the Court's Order Re Further Briefing on the six questions identified below.

**1.   What authority exists for the form of injunctive relief sought and the intended mechanisms of enforcing it?**

The Revised Proposed Judgment calls for the Court to enjoin Defendants and all those from operating radaris.com, radaris.net, radaris.us, radaris.biz, radaris.info, radaris.org, trustoria.com, and all other websites that display, publish, or disseminate information about Class Members that are operated by Defendants ("Subject Domain Names").[1]  (*See* § II.3.)   The injunction extends those to all "in active concert or participation with any of them, who receive actual notice of this Judgment, whether acting directly or indirectly," including website service providers, domain name registrars, advertising service providers, banks and financial institutions, and payment processors.  (*Id.* at § II.3.a-f.)

The language of the Proposed Judgment requiring compliance by "persons who are in active concern or participation" with the Defendants comes from Fed. R. Civ. Pro. 65, which specifies who may be bound by a district court's injunction.  The rule is based on the "venerable proposition" that "a person who knowingly assists a defendant in violation an injunction subjects himself to civil as well as criminal proceedings for contempt."  *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 35 (S.D.N.Y. 2015) (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir.1930) (Hand, J.)); *see also Regal Knitwear Co. v. Nat'l Labor Relations Board*, 324 U.S. 9, 14 (1945)(observing that Rule 65(d) prevents defendants from varying out prohibited acts through aiders and abettors that were not parties to the original proceeding).

In *Arista*, the plaintiffs obtained a TRO against the defendants "and any persons acting in concert or participation with them or third parties providing services used in connection with Defendants' operations" from, among other things, '[u]sing, linking to, transferring, selling, exercising control over, or otherwise owning the domain names grooveshark.io or grooveshark.pw or any other domain name that incorporates, in whole or in part, any of Grooveshark Marks" and from '[d]irectly or secondarily infringing Plaintiffs' copyrighted sound recordings via the [Defendants' service] or any variations thereof.'"  *Arista* at 33-34.  The plaintiffs discovered that a

---

[1]  *See* Kachadoorian Decl., filed herewith, Ex. C.

company named CloudFlare was providing services to domains owned by the defendants. "Defendants have engaged CloudFlare to convert the domain name into the IP address for the website associated with that domain name so that the user can connect to the website they are trying to reach." *Id.* at 34. When the plaintiffs served CloudFlare with the TRO directly it to stop providing services to the defendants, CloudFlare refused to comply. *Id.* But the district court ruled that CloudFlare was disobeying the TRO. *Id.* at 36-37. By providing services to the defendants that enabled users to connect to their website, CloudFlare was acting "in concert or participation" with the defendants. *Id.* (citing cases). The district court reached this holding even though CloudFlare's services were automated and CloudFlare lacked any motive to help the defendants violate the injunction. *See also The North Face Apparel Corp. v. Fujian Sharing Imp, & Exp. Ltd. Co.*, No. 10 Civ. 1630(AKH), slip op. 4–6 (S.D.N.Y. June 24, 2011) ("Public Interest Registry, for example, cannot continue to make the connections that enable customers attracted to defendants' websites to access those websites."); *S. Cent. Bell Tel. Co. v. Constant*, 304 F. Supp. 732, 733-34 (E.D. La. 1969), *aff'd*, 437 F.2d 1207 (5th Cir. 1971) (holding that telephone company was required not to route calls to moving company subject to trademark injunction in prior action).

Just as in *Arista*, the language of the injunction in the Proposed Judgement would bind persons providing services to Defendants, particularly website services. In fact, the language mirrors the language of the TRO entered in *Arista*, as well as the language of injunctions in numerous judgments entered by other district courts. *See Lions Gate Films Inc. v. Does*, 214-cv-06033-MMM-AGR, 2014 WL 12580399, at *2 (C.D. Cal. Aug. 4, 2014); *ABS-CBN Corp. v. Ashby*, D. Ore. Case No. 3:14-cv-1285 (Aug. 8, 2014), attached to Kachadoorian Decl. at Exs. A and B.[2]

At present, Plaintiffs are unaware of all entities that are in active concert or participation with Defendants (owing in large part to their inability to conduct discovery on Defendants), and the identity of these third parties could change over time, after entry of the judgment. But to enforce the judgment, should Defendants refuse to comply, Plaintiffs will seek to effect the transfer of domain names registered to Defendants directly from the domain name registrars and registries. The

---

[2] Plaintiffs respectfully request that the Court take judicial notice of these orders. *See Rosales-Martinez v. Palmer*, 753 F. 3d 890, 894 (9th Cir. 2014) ("It is well established that we may take judicial notice of judicial proceedings in other courts.").

1    Proposed Order explicitly requires these entities to transfer to domain names to Plaintiffs.    This

2    accomplishes the primary objective Plaintiffs seek on behalf of the class, namely, the removal of

3    Defendants' illegal websites from the Internet.  An injunction that directs registrars or registries to

4    transfer ownership of a domain name to a prevailing plaintiff are extremely common, as evidenced

5    by the case law relating to cyber- or domain-squatting, i.e., the practice of registering names,

6    especially well-known company or brand names, as internet domains with bad faith intent to profit

7    from the goodwill of a trademark belonging to someone else.  *See*, *e.g.*, *Globalsantafe Corp. v.*

8    *Globalsantafe.Com*, 250 F. Supp. 2d 610, 623 (E.D. Va. 2003) ("It is normally appropriate to direct

9    a cancellation order primarily at the current domain name registrar and to direct that cancellation

10   proceed through the usual channels.  However, in situations, where, as here, such an order has

11   proven ineffective at achieving cancellation, it becomes necessary to direct the registry to act

12   unilaterally to carry out the cancellation remedy."); *Am. Online, Inc. v. Aol.Org*, 259 F. Supp. 2d

13   449, 455 (E.D. Va. 2003)(ordering domain name registry to transfer domain name).

14        The Revised Proposed Judgment also requires databases underlying the Subject Domain

15   Names to be deleted, including those databases residing on any cloud computing service such as

16   Amazon Web Services.  Any such cloud computing service used by Defendants to hold information

17   used to compile illegal reports on Class Members would be acting in active concert or participation

18   with the Defendants, the Revised Proposed Judgment appropriately requires the cessation of such

19   assistance, including the housing of such data.  *See C.D.S., Inc. v. Bradley Zetler, cDs, LLC*, 16 CIV.

20   3199 (VM), 2016 WL 7668473, at *3 (S.D.N.Y. June 29, 2016) (entering preliminary injunction

21   ordering that data be exported to a new cloud site to which plaintiff had access).

22        Further authority for the requested injunctive relief (and particularly the alternative relief in

23   the Revised Proposed Judgment, i.e., compelling Defendants' compliance with the FCRA and

24   California law) lies in orders issued by the Federal Trade Commission enjoining entities whose

25   business practices were similar to those of defendants here.  Copies of the FTC's orders enjoining

26   Filiquarian Publishing and Instant Checkmate, Inc. were attached to the declaration of Justin

27   Kachadoorian submitted with the motion for default judgment as Exhibits E and F.  [ECF No. 46-

28   1.] The proscriptions set forth in the proposed inunction that Plaintiffs submits with the default

3

judgment motion come directly from the orders issued by the FTC.  *See* Kachadoorian Decl., Ex. E

pp. 3-6, Ex. F pp. 4-9.

    **2. Whether injunctive relief is available in a private FCRA action, and how the plaintiffs would frame their request for injunctive relief under California law if they're unsuccessful under the FCRA.  *See, e.g., Hogan v. PMI Mortg. Ins. Co.*, No. C 05-3851 PJH, 2006 WL 1310461, at \*10 (N.D. Cal. May 12, 2006); *Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1145 (N.D. Cal. 2005); *see also Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir. 2000).**

    There is a split in authority as to whether injunctive relief is available under the FCRA, and

the Ninth Circuit has not ruled on the question, *see Valentine v. First Advantage Saferent, Inc*., No.

EDCV 08–142 VAP (OPx), 2009 WL 4349694, at \*15 (C.D. Cal. Nov. 23, 2009), though the closest

it has come was to affirm a district court order granting a preliminary injunction under the FCRA.

*See Greenway v. Info. Dynamics, Ltd*., 399 F. Supp. 1092, 1097-97 (D. Ariz. 1974), *aff'd*, 524 F.2d

1145 (9th Cir.1975)("adopt[ing] the careful reasoning of Judge Copple.").  But the Ninth Circuit

has repeatedly concluded that the FCRA must be construed liberally in favor of the consumer.  *See*,

*e.g.*, *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

    The courts that find that the FCRA precludes injunctive relief (cited in the inquiry above) do

so because the FCRA expressly grants injunctive relief in certain provisions, such as granting the

FTC the ability to seek injunctive relief, but does not expressly do so in other provisions, such as

the private right of action.

    To the contrary, many other courts hold that injunctive relief is available under the FCRA.

These courts correctly decline to read the FCRA's silence on equitable relief as a private remedy as

a prohibition.  A "district court should start with the assumption that, in actions over which it has

jurisdiction, it has authority to issue injunctive relief.   In the absence of 'the clearest command to

the contrary from Congress,' the plaintiff may seek injunctive relief."  *Beaudry v. TeleCheck*

*Services, Inc.*, 579 F. 3d 702 (6th Cir. 2009) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct.

2545, 61 L.Ed.2d 176 (1979)).  "The FCRA contains no 'clear command' that injunctive relief is

unavailable; consequently, it is available."  *Andrews v. Trans Union Corp. Inc.* (C.D. Cal. 1998) 7

F.Supp.2d 1056, 1084, fn. 32, *aff'd in part, rev'd in part on other grounds,* 225 F.3d 1063 (9th Cir.

2000), *rev'd on other grounds and remanded*, 534 U.S. 19 (2001).

The absence of an express prohibition in the FCRA, necessitates that federal courts have authority to award injunctive relief in cases brought under the FCRA.  Congress enacted the FCRA in order to rectify abuses of consumers that were, and continue to be, prevalent in the credit reporting industry and must be construed in favor of the consumer.  *Guimond*, 45 F.3d at 1333; *Stiff v. Wilshire Credit Corp.*, 2006 WL 141610, at \*2-3 (D. Ariz. Jan. 17, 2006); *Adams v. Berger Chevrolet, Inc.*, 2001 WL 533811 (W.D. Mich. May 7, 2001).  Reading an anti-injunction clause into the act runs contrary to this principle.

In *Engelbrecht v. Experian Info. Servs., In*c., No. EDCV 12-01547 VAP, 2012 WL 10424896, at \*3 (C.D. Cal. Nov. 6, 2012), the district court declined to follow the Fifth Circuit in *Washington*; instead it relied on the Sixth Circuit's reasoning in *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir.2009) finding that no provision of the FCRA restricts the plaintiff's right to equitable relief.  *Engelbrecht* at \*4.  A mere negative inference was not sufficient.  The court pointed to Ninth Circuit authority holding that a mere "negative inference" does not qualify as the "clearest command" of Congress.  *Id.* (citing *Plata v. Schwarzenegger*, 603 F.3d 1088, 1095 (9th Cir. 2010)).  Moreover, section 1681u(m) of the FCRA created a conflicting negative inference.  *Id.*  That section expressly provides that "the remedies and sanctions set forth in this section shall be the only judicial remedies and sanctions for violation of this section."  Since section 1681u(m) explicitly limited the available remedies under that section, Congress had no intent to limit the available remedies under other sections of the FCRA.  *Id.*

The FCRA is a consumer-protection statute with a remedial purpose to protect individuals from inaccurate and illegal reporting.  *Id.* at \*4.  "The statute's 'consumer oriented objectives support a liberal construction,' which is well served by the availability of injunctive relief."  *Id.* (quoting *Guimond*, *supra*, 45 F.3d at 1333).  The statute would not be able to achieve its principal objective without the availability of injunctive relief.  *Id.* at \*5.  "[I]f the FTC lacked the resources to pursue injunctive relief for each consumer whose credit report was inaccurate, a consumer without the right to bring a claim for injunctive relief would be helpless to correct her credit information."  *Id.*  Indeed, notwithstanding a defendant's clear liability consumers would, for example, be unable to correct erroneous information contained in a consumer report and instead would be limited to

5

filing repeated actions for statutory or actual damages. *See Andrews*, 7 F.Supp.2d at 1084, fn. 32 (noting the absurdity that would result from affording a consumer the right to obtain an injunction to correct inaccurate information in her own file); *Wenger v. Trans Union Corp.*, 1995 U.S. Dist. LEXIS 22214, *3 (C.D. Ca. 1995) (finding that without injunctive relief, plaintiffs alleging FCRA violations would have to repeatedly file actions for actual damages to obtain relief"). But "[t]hese fairness concerns would come to nothing had Congress clearly, unequivocally restricted the availability of injunctive relief." *Engelbrecht* at *5.

Several other courts have reached the same conclusion. *See Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) (stating that a plaintiff can obtain injunctive relief even where they cannot establish damages); *Greenway v. Info. Dynamics, Ltd*., 399 F. Supp. 1092, 1097-97 (D. Ariz. 1974) (certifying a class action and granting a preliminary injunction under the FCRA prohibiting the defendant from further distribution of consumer credit reports), *aff'd*, 524 F.2d 1145 (9th Cir.1975); *Andrews v. Trans Union Corp*., 7 F. Supp. 2d 1056, 1084 (C.D. Cal. 1998) (finding availability of injunctive relief for consumer-reporting violations under the FCRA and the UCL); *Natale v. TRW, Inc.*, 1999 WL 179678 (N.D. Cal., March 30, 1999) (denying a motion to dismiss an injunctive relief count for FCRA violations as there may be a need for injunctive relief at the conclusion of the trial).

The district court in *Hogan v. PMI Mortg. Ins. Co.*, No. C 05-3851 PJH, 2006 WL 1310461, at *10 (N.D. Cal. May 12, 2006), which held injunctive relief was unavailable, failed to address the Supreme Court's pronouncement *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) that "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." Moreover, these courts completely ignore the fact that the FCRA is a consumer-protection statute intended to redress widespread abuses that plague consumer reporting. Their entire reasoning is based on the supposed "negative inference" created by the injunctive-relief provisions in sections 1681s(a) and 1681u, as noted above.

The supposed negative inferences these courts glean from sections 1681s and 1681u are not persuasive in any event. Section 1681u(n) allows a plaintiff to obtain an injunction against the FBI,

1    i.e., the government.  Without the addition of this section consumers could not sue the U.S.

2    government because the government, unlike private defendants, generally enjoys immunity from

3    suit.  "The United States, as sovereign, is immune from suit save as it consents to be sued, and the

4    terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *U.S.*

5    *v. Sherwood*, 312 U.S. 584, 586 (1941) (internal citations omitted).  Both the *Washington* and

6    *Howard* courts found that by specifically granting private litigants the authority to seek injunctive

7    relief from the federal government, Congress implicitly precluded private litigants from doing so

8    otherwise.  *Washington*, 199 F.3d at 269; *Howard*, 371 F. Supp. 2d at 1145.  However, these courts

9    do not address the simple fact that without this specific grant of authority, private litigants are

10   otherwise foreclosed from suing the United States government or any of its agencies.  The legislative

11   purpose of the FCRA in providing maximum relief to consumers is magnified when one realizes

12   that Congress found consumer protection under the FCRA to be of such import that the government

13   has consented to be enjoined from violating the FCRA.  *See Sherwood*, 312 U.S. at 586.

14        Nor does section 1681s create a negative inference suggested by some courts.  The

15   *Washington* and *Howard* courts both cite 15 U.S.C. § 1681s(a) of the FCRA for the proposition that

16   Congress intended to grant the FTC the exclusive right to seek injunctive relief.  *Washington*, 199

17   F.3d at 268; *Howard*, 371 F. Supp. 2d at 1145.  This section is not a limitation on an individual's

18   enforcement authority, but an expansion of the FTC's enforcement powers.

19        The FTC Act gives the FTC the authority "to prevent persons, partnerships, or corporations,

20   except banks, savings and loan institutions described in [15 U.S.C. § 57a(f)(3)], Federal credit

21   unions described in [15 U.S.C. § 57a(f)(4)], common carriers subject to the Acts to regulate

22   commerce, air carriers and foreign air carriers subject to the Federal Aviation Act of 1958, and

23   persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act,

24   1921, except as provided in [7 U.S.C. § 227(b)], from using unfair methods of competition in or

25   affecting commerce and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C.

26   § 45 (2002).  The definition of "corporation" in the FTC Act is "any company, trust, ... except

27   partnerships, which is organized to carry on its own business for its own profit or that of its

28   members." 15 U.S.C. § 44.  Thus the FTC's authority to prevent unfair methods of competition,

7

1   absent the FCRA, is limited to for-profit organizations in or affecting commerce.

2        Congress greatly expanded the FTC's jurisdictional authority by granting it enforcement

3   powers under the FCRA in 15 U.S.C. § 1681s(a).  The FTC has recognized that through 15 U.S.C.

4   § 1681s, Congress expanded its authority.  FTC Official Staff Commentary of the FCRA, section

5   621 - Administrative Enforcement (1995).  Congress gave no indication in the body of the FCRA

6   or in the legislative history that this section should be read as restrictive rather than expansive.

7        Neither the *Washington* nor *Howard* court analyzed § 1681s, which grants the FTC the

8   authority to seek injunctive and declaratory relief, nor does it appear from the decisions that this

9   issue was fully briefed by the parties.  Without the specific grant of authority in § 1681s, the FTC's

10  enforcement powers would be severely limited.  Thus allowing both private litigants and the FTC

11  the ability to enforce the FCRA is entirely consistent with the purpose of the FCRA which is to

12  insure that the industry exercises "their grave responsibilities with fairness, impartiality, and a

13  respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).  Allowing private litigants to

14  seek injunctive and declaratory relief for violations of the FCRA is consistent with the other

15  provisions in the statute and is therefore proper.  *Wenger*, *supra* at *3; *Jones v. Federated Fin.*

16  *Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998) (holding that although the FCRA did not

17  specifically address vicarious liability, application of the apparent authority doctrine advances the

18  FCRA's goals and produces no inconsistency with other FCRA provisions).

19       What is more, neither the *Hogan*, *Howard*, nor *Washington* courts consider the effect of the

20  conflicting negative inference created by section 1681u(m), as discussed above.

21       Finally, even *Howard* implied that injunctive may be available in a class action.  This is

22  important.  Rule 23 separately allows the court to provide injunctive relief where the defendant has

23  acted or refused to act on grounds generally applicable to the class." Fed. R. Civ. P. 23(b)(2).  Rule

24  23 is a procedural tool that does not require a grant of jurisdictional authority from Congress.  Rule

25  23 is a management tool afforded the courts to encourage economies of time and resources.  *See*

26  *Eisen v. Carlisle & Jacquelin*, 417 U. S. 156, 177-78 (1974).  Defendant engaged in a pattern and

27  practice of violating the FCRA.  If not enjoined from such actions, Defendants will continue to

28  violate the FCRA and the class—virtually every person in the United States—will continue to suffer

8

harm.  Several courts, including this one, have certified FCRA classes under Federal Rule of Civil Procedure 23(b)(2).  *See*, *e.g.*, *Greenway v. Info. Dynamics, Ltd.*, 399 F. Supp. 1092, 1097 (D. Ariz. 1974), *aff'd*, 524 F.2d 1145 (9th Cir. 1975); *Berry v. Schulman*, 807 F.3d 600, 606-08 (4th Cir. 2015) (approving class action settlement granting class-wide injunctive relief under the FCRA, where class encompassed "all individuals in the United States about whom the Accurint database contained information from November 2006 to April 2013—roughly 200 million people"); *Huebner v. Radaris*, ECF No. 42 ("Certification of the FCRA claims is appropriate under Rule 23(b)(2), because the defendants 'ha[ve] acted or refused to act on grounds that apply generally to the class'—namely, by asserting that Radaris is not a consumer reporting agency subject to the statutory obligations imposed on such agencies.").

To the extent that the Court finds that injunctive relief is unavailable under the FCRA, the Court remains empowered to issue an injunction under California law, *see* Cal. Bus. & Prof. Code § 17204; Cal. Civil Code § 1785.31(b); *Andrews* at 1083-1084 (finding the plaintiff is entitled to injunctive relief under the UCL for consumer-reporting violations), so the form of the injunction need should change.  Defendants are disseminating information of the internet about members of the California Subclass through the Subject Domain Names.  If Defendants do not willingly comply with the Court's order, then removal of the offending websites is appropriate.  *See ABS-CBN Corp. v. Ashby*, D. Ore. Case No. 3:14-cv-1285 (Aug. 8, 2014) (ordering registrar to redirect defendants' websites displaying infringing material, but not exclusively, infringing material owned by plaintiffs).

Although the Subject Domain Names also disseminate illegal reports about Class Members who do not belong to the California Subclass, even assuming the Court may not issue an injunction as to those Class Members, a website that contains illegal content about California residents should still be enjoined.  Similarly, any third parties that provide services to the Subject Domain Names, and thus facilitate access to Defendants' illegal websites, should likewise be enjoined.  Indeed this case is very similar to the raft of actions filed by ABS-CBN Corp. against various websites that display infringing material.  Although these websites display material that infringes ABS-CBN's copyrights, it also displays other material, some of which infringes copyrights not owned by ABS-

9

1   CBN.  *See ABS-CBN Corp. v. Rempillo*, 15-61513-CIV, 2015 WL 11069999, at *1 (S.D. Fla. Sept.

2   2, 2015).  *See also* Complaint, at ¶ 41, posted at *http://servingnotice.com/BG3PDE/* (last accessed

3   Feb. 21, 2017)(observing that defendant's website also displays copyrighted material to which

4   plaintiff does not own the copyright).   Nevertheless the multiple district courts in these cases have

5   routinely entered virtually the same order requiring the domain name registrars to transfer to domain

6   names to a registrar of the plaintiff's choosing so that internet traffic could be re-routed to the a

7   website posing the Complaint and other court documents.  *Id.*  This injunction was appropriate so

8   that the defendants could not continue to infringe the plaintiff's copyrights and cause harm to their

9   reputation and financial loss.  *See also Am. Online, Inc. v. Aol.Org*, 259 F. Supp. 2d 449, 455 (E.D.

10  Va. 2003) (ordering transfer of domain name even though website may have displayed legal content

11  in South Korea); *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1104 (D. Colo. 2014) (transferring

12  infringing domain name to plaintiff on defendant's default where products sold on defendant's

13  website were not alleged to be counterfeit).

14      No too here, the transfer to the offending domain names to a Registrar of Plaintiffs' choosing

15  so that Defendants do not continue to violate their privacy, damage their reputation, and threaten

16  their job prospects.

    **3.  Whether any of the California-law claims or remedies are preempted by the FCRA.**
17
    **      *See*, *e.g.*, *Ramirez v. Trans Union, LLC*, 899 F. Supp. 2d 941, 947 (N.D. Cal. 2012).**
18

19          **A.  Injunctive Relief Is Available under California Law.**

20      Plaintiffs' California law claims under the California Consumer Reporting Agencies Act,

21  Cal. Code § 1785, *et seq*. ("CCRAA") and California's Investigative Consumer Reporting Agencies

22  Act, Cal. Civ. Code § 1786, *et seq*. ("ICRAA") are not preempted by the FCRA.  Injunctive relief

23  is available under the CCRAA and the ICRAA.   Although there is a difference of authority,

24  numerous courts have held that the FCRA authorizes injunctive relief, as discussed above.  Nor are

25  injunctions duplicative.  The relief with respect the CCRAA and ICRAA applies to the California

26  Subclass and requires Defendants' compliance with California law.  An injunction under the FCRA

27  requires compliance with federal law.  To the extent the injunctions are coextensive, they merely

28  regulate the same conduct.

The district court in *Ramirez v. Trans Union, LLC*, 899 F. Supp. 2d 941, 947 (N.D. Cal. 2012), while not deciding whether the FCRA allows for injunctive relief, ruled that a claim for injunctive relief under the California's consumer-reporting laws is not preempted by the FCRA.  *Id.* "There is no support for Defendant's assertion that providing private litigants with an additional remedy under the CCRAA is 'inconsistent' with the FCRA.  To the contrary, the Ninth Circuit's decision in *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009), suggests, if not compels, the conclusion that the additional remedy provision is not inconsistent with the FCRA…. Here, as in *Gorman*, compliance with state law—the availability of an injunctive remedy to private litigants—would not result in a violation of a federal law.  Thus, the availability of the remedy is not inconsistent with the FCRA." *Id.* at 947-48.

### B.  Plaintiffs' FCRA Claims Do Not Preclude Relief under the CCRAA and ICRAA.

The CCRAA provides, "Any consumer credit reporting agency or user of information against whom an action brought pursuant to Section 1681n or 1681o of Title 15 of the United States Code is pending shall not be subject to suit for the same act or omission under Section 1785.31." Cal. Civ. Code § 1785.34(a).

The ICRAA similarly provides, "Any investigative consumer reporting agency or user of information against whom an action brought pursuant to Section 1681n or 1681o of Title 15 of the United States Code is pending shall not be subject to suit for the same act or omission under Section 1786.50." Cal. Civ. Code § 1786.52(a).

The election of remedies under the CCRAA and ICRAA does not require Plaintiffs to choose between proving liability and recovery under the FCRA and the California statutes.  Civil Code sections 1785.34(a) and § 1786.52 only apply where an FCRA suit is litigated in federal court and then another suit for the same conduct is brought under California law; they do not apply where, as here, there is one complaint in one court that simply includes all applicable claims.  The subject Civil Code sections prohibit duplicative lawsuits, not inclusion of all applicable claims in the same lawsuit.

"The only California appellate court to address § 1785.34(a) held that it does not bar simultaneously filed claims….  The court 'agree[d] with the trial court's assessment' that the 'plain

11

meaning' of § 1785.34(a) applies to 'a circumstance where there is a prior action pending under the federal law, and someone brings a later action under the state law.'"  *Ramirez*, *supra*, 899 F. Supp. 2d at 944 (quoting *Cisneros v. U.D. Registry, Inc*., 39 Cal. App. 4th 548, 581 (1995) (stating that election of remedies applies when there is a "prior action pending under the federal law, and someone brings a later action under the state law")).

Although two courts in this District have found duplicative ICRAA and CCRAA to be barred, *see Drew v. Equifax Info. Servs.*, LLC, No. 07-CV-0726-SI, 2009 WL 595459, at *11 (N.D. Cal. Mar. 5, 2009) and *Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-cv-2588-JCS, 2015 WL 5782352, at *7, n.7 (N.D. Cal. Oct. 5, 2015), other courts reject the reasoning of *Drew* and *Coleman* and rely on *Cisneros*.  "[G]iven the current state of the law, this Court is bound by the interpretation of the California Court of Appeal in *Cisneros* in finding that the provisions at issue bar only subsequent suits involving state law claims."  *Burnthorne-Martinez v. Sephora USA, Inc.*, No. 16-CV-02843-YGR, 2016 WL 6892721, at *7 (N.D. Cal., Nov. 23, 2016); *Guillen v. Bank of Am. Corp.*, No. 10-CV-5825-EJD, 2011 WL 4071996, at *4 (N.D. Cal. Aug. 31, 2011) ("Defendants interpret § 1785.34 to mean that claims under the FCRA and the CCRAA cannot be brought in the same complaint, and that Plaintiff must therefore elect remedies. As Plaintiff points out, however, this interpretation has been rejected by the sole California appellate court to examine this statute in a published opinion. [] This court must defer to the interpretation of the California Court of Appeal absent convincing evidence the California Supreme Court would decide the matter differently.") (citing *Cisneros v. U.D. Registry, Inc.*, 39 Cal.App.4th 548, 581 (1995); *Ramirez*, *supra*, 899 F. Supp. 2d at 945.

These courts correctly conclude that they are bound by the decision of California's intermediate appellate courts.  *See*, *e.g.*, *Munson v. Del Taco, Inc*., 522 F.3d 997, 1002 (9th Cir. 2008) ("In the absence of a pronouncement by the highest court of a state, [we] must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently"); *Owen v. United States*, 713 F. 2d 1461, 1564-65 (9th Cir. 1983) ("In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is

12

1   'convincing evidence that the highest court of the state would decide differently.'"); *Fireman's Fund*

2   *Ins. Co. v. North Pacific Ins. Co.*, No. 10-35814, 2011 WL 3510936, at *2 (9th Cir. 2011) (stating

3   that "the district court correctly concluded that the reasoning in the intermediate state-court decision

4   … supersedes our prior reasoning in….  As there are no 'convincing' reasons for disagreeing with

5   the intermediate state court, that decision is a conclusive interpretation of the statute"); *Hernandez*

6   *v. Towne Park*, No. CV 12-02972 MMM (JCGx), 2012 WL 2373372 at *13 n.62 (C.D. Cal. June

7   22, 2012) ("The Ninth Circuit has strongly stated that when applying California law, federal district

8   courts should follow precedential decisions by the California Court of Appeal.").

9        Federal courts are bound to follow the interpretation of California courts regarding whether

10   California law provides for injunctive relief under the CCRAA and ICRAA when an FCRA claim

11   also is alleged.  The standing decision on California law is *Cisneros*.  The *Ramirez* Court held that

12   it was "required to follow Cisneros absent 'convincing evidence' the California Supreme Court

13   would hold otherwise….  Thus, in *Guillen v. Bank of America Corp.*, No. 5:10–cv–05825 EJD

14   (PSG) 2011 WL 4071996, at *4 (N.D. Cal. Aug. 31, 2011), the district court relied on *Cisneros* to

15   deny defendants' motion to dismiss a CCRAA claim that was filed simultaneously with FCRA

16   claims.  The court likewise reasoned that it 'must defer to the interpretation of the California Court

17   of Appeal [in *Cisneros*] absent convincing evidence the California Supreme Court would decide the

18   matter differently.' [] This Court must do the same."  *Ramirez v. Trans Union, LLC*, 899 F. Supp.

19   2d 941, 944-45 (N.D. Cal. 2012) (citing *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 889

20   (9th Cir. 2010) ("'Our duty as a federal court in this case is to ascertain and apply the existing

21   California law' ….  We are bound by pronouncements of the California Supreme Court on

22   applicable state law, but in the absence of such pronouncements, we follow decisions of the

23   California Court of Appeal unless there is convincing evidence that the California Supreme Court

24   would hold otherwise") (citation omitted); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 n. 7 (9th

25   Cir. 2011) ("We are bound by pronouncements of the California Supreme Court on applicable state

26   law, but in the absence of such pronouncements, we follow decisions of the California Court of

27   Appeal unless there is convincing evidence that the California Supreme Court would hold

28   otherwise").

The courts that reached a contrary determination either (1) based the decision on the fact that the CCRAA and ICRAA are different statutes, and therefore *Cisneros* need not to be followed, and (2) did not undertake a statutory interpretation.   *See Coleman v. Kohl's Dep't Stores, Inc*., No. 15-cv-2588-JCS, 2015 WL 5782352, at *7 n.7 (N.D. Cal. Oct. 5, 2015) (stating that to the "extent plaintiffs submit a second amended complaint that alleges both FCRA and ICRAA claims stemming from the same act or omission, § 1786.52 bars those ICRAA claims"); *Drew v. Equifax Info. Servs., LLC*, No. 07-CV-0726-SI, 2009 WL 595459, at *11 (N.D. Cal. Mar. 5, 2009) (finding that the "majority of plaintiff's CCRAA claims are duplicative of his FCRA claims against [defendants] and thus barred").   The courts such as *Coleman* that held that the ICRAA bars claims under that statute where FCRA claims are alleged did not follow *Cisneros* and did not thoroughly analyze the similarities between the CCRAA and ICRAA.   However, the language of the provisions requiring an election of remedies is the same under both state statutes.

Following *Cisneros* and similar decisions holding that plaintiffs need not choose between remedies under the FCRA (which some courts have held does not authorize injunctive relief) and the CCRAA and ICRAA (which do), the *Ramirez* court held that the plaintiff's state law claims were viable.   "As Plaintiff voluntarily dismissed the Pennsylvania action before filing this action, Plaintiff did not have any FCRA claims pending within the meaning of § 1785.34(a) at the time he filed this action. Section 1785.34(a) does not bar Plaintiff's CCRAA claims."   *Ramirez v. Trans Union, LLC*, 899 F. Supp. 2d 941, 944-45 (N.D. Cal. 2012).

**C.  The FCRA's Preemption Provision Does Not Preclude the Relief Requested Here.**

The FCRA's provision relating to preemption does prohibit Plaintiffs' claims under the CCRAA and ICRAA.   The FCRA provides, "[e]xcept as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency." 15 U.S.C. § 1681t(a).   "No requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under

14

(A) subsection (c) or (e) of section 604 [§ 1681b], relating to the prescreening of consumer reports; (B) section 611 [§ 1681i], relating to the time by which a consumer reporting agency must take any action, including the provision of notification to a consumer or other person, in any procedure related to the disputed accuracy of information in a consumer's file, except that this subparagraph shall not apply to any State law in effect on the date of enactment of the Consumer Credit Reporting Reform Act of 1996 . . . .  (E) section 1681c of this title, relating to information contained in consumer reports, except that this subparagraph shall not apply to any State law in effect on September 30, 1996." 15 U.S.C. § 1681t(b)(1).

"Sections (b) and (c) specifically detail the types of obligations which are preempted.  For example, the FCRA provides that the states may not impose any laws 'relating to the prescreening of consumer reports.' 15 U.S.C. § 1681t(b)(1)(A).  State laws which do not fall within subsections (b) or (c) may still be preempted, but only 'to the extent that those laws are inconsistent with any provision [of the FCRA], and then only to the extent of the inconsistency.' 15 U.S.C. § 1681t(a). The CCRAA liability provisions at issue in this lawsuit are not preempted … because they do not fall within section 1681t(b) or (c) and are not otherwise inconsistent with any provision of the FCRA.  As explained, *supra*, they are virtually identical to the requirements imposed by the FCRA. Accordingly, they are saved from preemption by the FCRA."  *Ramirez v. Trans Union, LLC*, 899 F. Supp. 2d 941, 947 (N.D. Cal. 2012).

Here, as in *Ramirez*, the conduct of CRAs preempted under Section 1681t(b) of the FCRA is not implicated by the allegations of Plaintiffs' Complaint.  Section 1681t(b)(1)(B) preempts obligations relating to the time for performing actions required of the CRA; Section 1681i imposes time restraints on CRAs for performing obligations under that section.  The CCRAA and ICRAA provisions at issue here do not impose similar time restrictions for performing the required actions. *Compare* Complaint ¶¶ 77-79, *with* Complaint ¶¶ 89-95, 100-106.  Plaintiffs' CCRAA and ICRAA claims do not pertain to information regulated under Section 1681c, and do not implicate conduct regulated by Section 1681b(c) and (e).  Furthermore, the obligations imposed on credit reporting agencies under the provisions of the CCRAA and ICRAA are consistent with the obligations imposed by the FCRA, as the court in *Ramirez* concluded.  Moreover, the other preemptions under

15

section 1681t(b) and (c) do not apply to CRAs like Defendants here.  There is no preemption here.

**4.  Whether either the CCRAA or the ICRAA permit an overlapping action under the FCRA, and how the plaintiffs would frame their request for injunctive relief in the event of an adverse ruling.  *See Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-CV-02588-JCS, 2015 WL 5782352, at \*7 n.7 (N.D. Cal. Oct. 5, 2015).**

*Coleman* and *Drew* do not represent the opinion of the majority of courts regarding an election of remedies.  Other courts considering FCRA and CCRAA and ICRAA claims brought together in the same action have held that plaintiffs are not required to forego the state claims in favor of the federal claims, but rather the provisions apply when a prior federal action is litigated and then a subsequent state law action is brought but not where a plaintiff simply brings all available claims in one action.  The California Court of Appeal has reached this holding (*Cisneros*), and it is the only pronouncement on the issue from a California appellate court.

Injunctive relief is available under the FCRA and the CCRAA and ICRAA.  An injunction under the FCRA would involve (a) requiring Defendants to remove their offending website, and (b) complying with the FCRA provisions at issue in this action.  *See* Revised Proposed Judgment lodged herewith.  An injunction under the CCRAA and the ICRAA would entail requiring defendants to comply with the provisions of California law alleged in the Complaint, to the extent those obligations are not co-extensive with the FCRA.  To the extent there is overlap between the conduct that is being enjoined under federal and state law, no conflict arises because the Court is enjoining the same conduct, with the additional force of law to support it.

In *Coleman*, the court, in a footnote, analyzed the election of remedies provision under the ICRAA.  "§ 1786.52 of the ICRAA provides an election of remedies provision.  Cal. Civ. Code § 1786.52(a).  To the extent Plaintiffs submit a second amended complaint that alleges both FCRA and ICRAA claims stemming from the same act or omission, § 1786.52 bars those ICRAA claims." *Coleman*, WL 5782352, at \*7 n. 7.  However, other courts have rejected an interpretation of the ICRAA's election of remedies provision that bars FCRA claims and ICRAA or CCRAA claims when brought in the same action, as opposed to successive separate actions.  Indeed, the *Coleman* court recognized that other courts had reached the opposite conclusion.  "The Court is mindful of a

16

contrary holding with respect to an analogous election of remedies provision in the CCRAA." *Id.* However, the *Coleman* court decided that those decisions were inapplicable, because they dealt with the CCRAA's election of remedies provision, rather than the ICRAA's election of remedies provision. *Id.* ("The Court respectfully declines to follow *Ramirez* and *Guillen*, which dealt with a different statutory provision than the one here."). However, the election of remedies provisions in the CCRAA and ICRAA are identical. It would defy reason to interpret them to mean that the legislature intended to preclude simultaneous claims in the same action in the ICRAA while permitting them in the CCRAA when it used identical language in both statutes. Indeed, one court in this district has recognized as much. *See Burnthorne-Martinez v. Sephora USA, Inc.*, No. 16-cv-02843-YGR, 2016 WL 6892721, at *7 (N.D. Cal. Nov. 23, 2016) ("The court in *Drew* did not address the decision in *Cisneros* in any way, and the court in *Coleman*, while recognizing the existence of contrary authority, limited such to the CCRAA and found otherwise with respect to ICRAA. However, given the identical language between the provisions in ICRAA and CCRAA, this Court does not find such a distinction meaningful. Defendant did not identify any other relevant authority that would support a finding from this Court that the California Supreme Court would interpret the statute contrary to *Cisneros*. Thus, given the current state of the law, this Court is bound by the interpretation of the California Court of Appeal in *Cisneros* in finding that the provisions at issue bar only subsequent suits involving state law claims.").

5. **Whether the plaintiffs have demonstrated the kind of concrete injury necessary for Article III standing, particularly as to the section 1681b and section 1681e claims.** *See Spokeo, Inc. v. Robins*, **136 S. Ct. 1540, 1549-50 (2016),** *as revised* **(May 24, 2016).**

Plaintiffs have standing under Article III of the Constitution to bring their claims under 15 USC sections 1681b and 1681e. Plaintiffs allege that they suffered two types of concrete injury. First, because Radaris disseminated consumer reports about them to persons without a permissible purpose, Radaris invaded their privacy, intruded upon their seclusion, and placed them in a false light. Second, because Radaris failed to provide proper notices to and obtain certifications from users of its consumer reports, Plaintiffs have suffered informational injury because they did not receive disclosures they were entitled to under the FCRA.

In *Spokeo*, the Supreme Court reiterated the basic requirements of standing, namely, that a

17

1  plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct

2  of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*,

3  136 S.Ct. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

4        Here, the alleged statutory violations are traceable to Radaris's conduct; Plaintiffs allege that

5  Radaris violated the FCRA.  Moreover, the alleged violations are redressable by injunctive relief

6  and statutory damages under section 1681n.  Therefore the only question is whether Plaintiffs

7  suffered an injury in fact.  *See Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 629 (E.D. Va. 2016).

8        A plaintiff suffers injury in fact where suffered "an invasion of a legally protected interest

9  that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*

10  at 1548.  To be "particularized" an injury "must affect the plaintiff in a personal and individual way,

11  as opposed to an "undifferentiated, generalized grievance that all citizens share.  However, the fact

12  that an injury may be suffered by a large number of people does not of itself make that injury a

13  nonjusticiable generalized grievance, as long as each individual suffers a particularized harm." *Id.*

14  (internal quotation marks and citations omitted).  Although a "bare procedural violation" does not

15  constitute concrete injury, "the violation of a procedural right granted by statute can be sufficient

16  … [and] a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has

17  identified." *Id*. at 1549.

18        Plaintiff alleges causes of action under 15 USC sections 1681b(a) and e(a) against Radaris

19  for furnishing consumer reports to persons who do not have permissible purpose.  Section 1681e(a)

20  provides,

> Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 605 [§ 1681c] and to limit the furnishing of consumer reports to the purposes listed under section 604 [§ 1681b] of this title.  These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.  Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report.  No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 604 [§ 1681b] of this title.

28  Section 1681b specifies permissible uses of consumer reports, which include use in credit

18

1    transactions, insurance underwriting, employment purposes, investment purposes, and other uses

2    specified in the FCRA.  (Compl. ¶ 51.)

3          As alleged, Radaris has no procedures to ensure that prospective users of its consumers

4    reports have a permissible purpose under the FCRA.   (Compl. ¶¶ 52-54.)   Rather, Radaris

5    disseminates its consumer reports to anyone with an internet connection and sells more detailed

6    reports to anyone with a credit card.  (*Id.*)  Radaris readily admits to selling more than 75,000 such

7    reports annually.  (Kachadoorian Decl., ECG No. 46-1, Ex. A.)  To make matters worse, Radaris

8    fails to provide notices to persons who furnish information for its reports and who use its reports

9    notifying them of their obligations under the FCRA, as required under section 1681e(d)(1) and (2).

10   (Compl. ¶¶ 63-65.)  The result is that Radaris compiles often inaccurate information on consumers

11   and reports that information to persons who are not entitled to obtain in and in fact are completely

12   unaware of their responsibilities with regard to it.  (Compl. ¶¶ 4, 19.)  Indeed, not only does Radaris

13   neglect to follow reasonable procedures to assure the maximum possible accuracy of the information

14   that they provide in their consumer reports, it repeatedly admits that it makes no effort to verify or

15   evaluate the data.  (Compl. ¶¶ 66-67.)

16         The disclosure of consumer reports containing sensitive personal information and false

17   information to persons who lack a permissible purpose invades consumers' privacy, intrudes their

18   seclusion, and places them in false light, which constitutes a concrete injury under Article III.  *See*

19   *Van Patten v. Vertical Fitness Group, LLC*, Case No. 14-55980, 2017 WL 460663, at *4 (9th Cir.

20   Jan. 30, 2017)(finding Article III standing under *Spokeo* where defendant's conduct allegedly

21   invaded class members' privacy and intruded upon their seclusion).

22         In *Benton v. Clarity Services, Inc.*, 16-CV-06583-MMC, 2017 WL 345583, at *1 (N.D. Cal.

23   Jan. 24, 2017), Judge Chesney of this District explicitly held that the plaintiff had standing under

24   Article III to allege a violation of section 1681b for disclosing consumer reports to persons that lack

25   a permissible purpose.  The court found that the plaintiff had "suffered a violation of her right to

26   privacy," which is not a "'bare procedural violation, divorced from any concrete harm,' but rather

27   one that caused sufficiently concrete injury to [plaintiff's] privacy interest." *Id.* at *1 (citing *Spokeo*;

28   internal citations and interpolation omitted).  *See also Firneno v. Nationwide Mktg. Services, Inc.*,

                                                    19

2:14-CV-10104, 2017 WL 85831, at *3 (E.D. Mich. Jan. 10, 2017) (finding Article III standing for disclosing consumer reports to persons without a permissible purpose); *Griffin v. Bank of Am., N.A.*, 1:16 CV 1259, 2016 WL 7487724, at *4 (N.D. Ohio Dec. 28, 2016) (same); *Green v. RentGrow, Inc.*, 2:16CV421, 2016 WL 7018564, at *4 (E.D. Va. Nov. 10, 2016) (same); *Witt v. Corelogic Saferent, LLC*, 3:15-CV-386, 2016 WL 4424955, at *13 (E.D. Va. Aug. 18, 2016)(same).

Plaintiff also alleges a violation of section 1681b(b)(1), which mandates that a CRA only furnish a consumer report for employment purposes if it ensures that the person who obtains the report complies with certain disclosure requirements ("FCRA disclosures"). The FCRA disclosures inform consumers that a consumer report may be used for employment purposes and inform employers that they must provide consumers with certain information if any adverse action is taken based in whole or in part on the report. (Compl. ¶¶ 55, 56.)

The Ninth Circuit has recently held that the failure to provide such disclosures represents a concrete injury sufficient to confer Article III standing. *Syed v. M-I, LLC, 14-17186*, 2017 WL 242559, at *4 (9th Cir. Jan. 20, 2017). Defendants had an obligation under the FCRA, specifically section 1681b(b), to ensure that the prospective user of the consumer reports provides a standalone disclosure to the consumer about whom it intends to obtain a report, receives the consumer's authorization to obtain the report, and if the user decides to take adverse action based on the consumer report, provides the consumer with additional notice of such contemplated action as required under section 1681b(b)(3). By failing to ensure obtain a certification from prospective users to comply with these requirements, and indeed disclaiming applicability of the FCRA altogether, Radaris facilitated and even encouraged prospective users to violate these requirements, which the *Syed* court found to constitute concrete injury under Article III:

> The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process. The authorization requirement, § 1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check. By providing a private cause of action for violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating a "chain[ ] of causation that will give rise to a case or controversy."

1  *Syed* at *4. (citing *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 633 (E.D. Va. 2016) (holding

2  that an improper disclosure under 15 U.S.C. § 1681b(b)(2)(A) causes "a concrete injury sufficient

3  to confer standing")).

4       In *Thomas*, the court undertook a searching analysis of the FCRA's statutory text and

5  historical framework.  The court concluded, "It is clear from the statute's legislative history that

6  Congress intended that the FCRA be construed to promote the credit industry's responsible

7  dissemination of accurate and relevant information and to maintain the confidentiality of consumer

8  reports.  To that end, it was Congress' judgment, as clearly expressed in §§ 1681b(b)(2) and (3), to

9  afford consumers rights to information and privacy."  *Id.*  The court pointed to exemplar cases where

10 courts had held that the right to information creates a concrete injury that confers standing.  *Id.*  The

11 Court reasoned on the facts before it that "where a consumer alleges, as Thomas has here, that he or

12 she has received a disclosure that does not satisfy those requirements, the consumer has alleged a

13 concrete informational injury" and that class "members have alleged a violation of their statutorily

14 created right to privacy and confidentiality of their personal information."  *Id.*  The *Thomas* court

15 further reasoned that "it is well-settled that Congress may create a statutory right to privacy in certain

16 information that strengthens or replaces the common law, and citizens whose statutory right to

17 informational privacy has been invaded may bring suit under the statute to vindicate that

18 right."  *Id.*  Thus, where the plaintiff "has alleged that Defendants invaded the statutory right to

19 confidentiality of his personal information by obtaining his consumer report without first providing

20 the required disclosure or obtaining his written consent, as required by § 1681b(b)(2)(A)" the

21 "allegedly unauthorized disclosure of personal information constitutes an invasion of the statutory

22 right to privacy and a concrete injury sufficient to confer Article III standing."  *Id.*  The plaintiff and

23 the class also suffered concrete injury when the defendants took adverse employment action without

24 providing the information guaranteed by the statute, also creating an informational injury and "were

25 deprived of the opportunity to explain any negative records in their consumer reports and discuss

26 the issues raised in their reports with Defendants before suffering adverse employment action."  *Id.*

27       Numerous other have found concrete injury for alleged violations of the FCRA post-*Spokeo*.

28 *See Moody v. Ascenda USA, Inc.*, Case No. 16-cv-60364-WPD, 2016 WL 5900216, at *3 (S.D. Fla.

21

Oct. 5, 2016)("Plaintiffs suffered a concrete informational injury because Defendant failed to provide Plaintiffs with information to which they were entitled by statute, namely a stand-alone FCRA disclosure form. Through the FCRA, Congress has created a new right—the right to receive the required disclosure as set out in the FCRA—and a new injury—not receiving a stand-alone disclosure."); *Graham v. Pyramid Healthcare Solns., Inc.*, 8:16-CV-1324-T-30AAS, 2016 WL 6248309, at *2 (M.D. Fla. Oct. 26, 2016) ("Plaintiff's standing was established when Defendant alleged Defendant procured a consumer report on her background without following the FCRA's disclosure and authorization requirements. Defendant's effort to create a new enhanced standing requirement is misguided and contrary to the holding in *Spokeo*."); *Burke v. Fed. Nat'l. Mortg. Ass'n.*, 3:16CV153-HEH, 2016 WL 4249496, at *4 (E.D. Va. Aug. 9, 2016) ("The FCRA was meant to protect the interest of privacy.  The portion of the FCRA at issue here is clear that one's consumer report is not to be obtained except for the limited purposes specifically provided by the statute. … [G]iven the purposes, framework, and structure of the FCRA, the right to privacy established by the statute appears to be more substantive than procedural…  This being so, Plaintiff's alleged violation of privacy is a concrete harm, even if that harm does not lead to other, more tangible harms. Therefore, by claiming that the Defendant obtained her consumer report without a lawful purpose under the FCRA, Burke has pleaded a concrete harm."); *In re Nickelodeon Consumer Privacy Litigation*, 827 F. 3d 262, 274 (3d Cir. 2016) (stating in case under federal Privacy Act, "The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information.  Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact 'has traditionally been regarded as providing a basis for a lawsuit,' Google noted that Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private. Accordingly, we conclude that the plaintiffs have alleged facts which, if true, are sufficient to establish Article III standing."); *Church v. Accretive Health, Inc.*, 654 Fed. App'x 990, 994 (11th Cir. 2016) (FDCPA  violation confers Article III standing); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3-4

22

1   (N.D. Ill. July 11, 2016)("The information-access cases cited by *Spokeo* suggest that, in this case,

2   [Plaintiff] has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him

3   the right to information due to him under the FDCPA."); *accord Dickens v. GC Services Limited*

4   *Partnership*, Case No. 16-cv-803-T-30TGW, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016)

5   (finding standing where FDCPA violation alleged); *Hawkins v. S2Verify*, No. C 15-03502 WHA,

6   2016 WL 3999458, at *5 (N.D. Cal. July 26, 2016) (finding standing where FCRA violation

7   alleged); *Bowse v. Portfolio Recovery Associates, LLC*, No. 15 C 4037, 2016 WL 6476545, at *3

8   (N.D. Ill. 2016) (finding standing where FDCPA violation alleged).

9        The injuries that Plaintiffs sustained here under the FCRA constitute the concrete injury

10  required for Article III standing.   By not restricting dissemination of consumer reports to persons

11  certifying a permissible purpose, failing to provide notices to users and furnishers of its reports

12  explaining their obligation under the FCRA, failing to obtain assurances from users that they will

13  provide certain notices to consumers when using reports for employment purposes, and failing to

14  maintain procedures to ensure the maximum possible accuracy of information contained in its

15  reports, Radaris disseminated sensitive personal information, some of it erroneous, to persons

16  without any right to see it.   The invasion of Plaintiffs' right to privacy, the intrusion upon their

17  seclusion, and the portrayal of them in a false light, along with the failure to give consumers required

18  notices, constitutes concrete injury sufficient to confer standing under Article III of the Constitution.

19       Worse still, through this conduct Radaris put Plaintiffs at risk of injuries ranging from

20  adverse employment, housing, and lending decisions to physical danger from persons with

21  malicious intent.   By not ensuring the accuracy of consumer reports Defendants potentially cost

22  Plaintiffs and Class Members jobs, housing, loans, and damaged their reputations.   Indeed, "the

23  report on Plaintiff Huebner includes an incorrect and/or outdated work history that presented an

24  incomplete picture of his qualifications.   This was particularly harmful to Huebner because he was

25  actively seeking employment throughout the time that Defendants displayed this inaccurate

26  information about him and he has yet to find employment." (Compl. ¶ 19.)   These harms are even

27  more concrete than the lack of disclosures in the employment context discussed in *Syed, Moody,*

28  *Thomas*, and the same as the injury in *Burke*, and similar to the unauthorized disclosure of

23

1   information in *Nickelodeon*.

2   **6.    Whether the plaintiffs have adequately pled their statutory and common-law**
3   **misappropriation-of-likeness claims as required under *Eitel*. See Compl. (Dkt. 1) at**
    **¶¶ 19, 28-30, 110, 111; *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).**

4        Factors which may be considered by courts in exercising discretion as to the entry of a default

5   judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's

6   substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action;

7   (5) the possibility of a dispute concerning material  facts; (6) whether the default was due to

8   excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

9   favoring decisions on the merits.  6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26. Id. at

10  1471-72.

11       Plaintiff adequately plead the factors require for misappropriation of likeness.  *Eitel* did not

12  address the fullness of the allegations required to satisfy the factor of "merits of plaintiff's

13  substantive claim," the "sufficiency of the complaint," and "the possibility of a dispute concerning

14  material facts."

15       Here, with respect to misappropriation of likeness, Plaintiffs alleged that "Defendants'

16  website also includes photographs of consumers like Plaintiffs, including photographs that are not

17  or are no longer publicly available online or elsewhere."   Complaint, ¶ 19.  This specifically

18  describes the conduct that Plaintiffs complain of, and there is no possible dispute that Defendants in

19  fact engage in this conduct.

20       Plaintiffs also specifically described the conduct that defendants illegally engaged in with

21  respect to using Class Members' likenesses for advertising without their permission.  There can be

22  no dispute as to these facts, that defendants used Class Members' pictures and did not obtain their

23  permission, and defendants have no record of such permission.  "Defendants also uses the names,

24  photographs, and likenesses of California residents and deceased personalities for the purposes of

25  advertising and selling background checks and subscriptions and also attracting third-party

26  advertisers whose ads appear on profile pages.  Some of this content was removed from the original

27  source but remained on the Radaris website long after.  Plaintiffs and upon information and belief

28  other California residents did not give Defendants consent to use their names, photographs, and

                                                        24

1 likenesses for the purpose of advertising and selling background checks and subscriptions and

2 selling advertising space to third-party advertisers." Complaint, ¶ 28-29.

3 There also can be no dispute that defendants used Class Member's pictures and names

4 without obtaining their consent and that Defendants have no record of obtaining consent and cannot

5 deny that the images and names were posted to Defendants' website and sold to others. "Defendants

6 have knowingly used the names, photographs, or likenesses, of Plaintiffs and other California

7 consumers and deceased personalities for purposes of advertising and selling background checks

8 and subscriptions and also attracting third-party advertisers whose ads appear on profile pages.

9 Defendants have used the names, photographs, or likenesses, of Plaintiffs and other California

10 consumers and deceased personalities without their consent." Complaint, ¶¶ 110, 111.

11 The "fourth category of invasion of privacy, namely, appropriation, 'has been complemented

12 legislatively by Civil Code section 3344, adopted in 1971.'" *Eastwood v. Superior Court*, 149 Cal.

13 App. 3d 409, 416-17 (1983).

14 Civil Code section 3344(a) provides, "Any person who knowingly uses another's name,

15 photograph, or likeness, in any manner, for purposes of advertising products, merchandise, goods,

16 or services, or for purposes of solicitation of purchases of products ... without such person's prior

17 consent ... shall be liable for any damages sustained by the person ... injured as a result thereof."

18 "A common law cause of action for appropriation of name or likeness may be pleaded by

19 alleging (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or

20 likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting

21 injury." *Id.* (citing Prosser, Law of Torts (4th ed. 1971) § 117, pp. 804-807; 3 Witkin, Cal. Procedure

22 (2d ed. 1971) Pleading, § 606, p. 2244.)

23 "In addition, to plead the statutory remedy provided in Civil Code section 3344, there must

24 also be an allegation of a knowing use of the plaintiff's name, photograph or likeness for purposes

25 of advertising or solicitation of purchases." *Id.* (citing Weinstein, "Commercial Appropriation," 52

26 L.A. Bar J. at pp. 430-433.) "Furthermore, recent judicial construction of section 3344 has imposed

27 an additional requirement. A 'direct' connection must be alleged between the use and the

28 commercial purpose." *Id.* (citing *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, supra, 43 Cal.

App.3d at p. 895).

"In this state the right of publicity is both a statutory and a common law right.  The statutory right originated in Civil Code section 3344 (hereafter section 3344), enacted in 1971, authorizing recovery of damages by any living person whose name, photograph, or likeness has been used for commercial purposes without his or her consent. Eight years later, in *Lugosi v. Universal Pictures* (1979) 25 Cal.3d 813, 160 Cal. Rptr. 323, 603 P.2d 425 (*Lugosi*), we also recognized a common law right of publicity, which the statute was said to complement." *Comedy III Productions v. Gary Saderup, Inc*., 25 Cal. 4th 387, 391 (2001).

"In addition to the common law cause of action, California also has a statutory cause of action for misappropriation. (Civ. Code, § 3344.)  The statutory cause of action complements rather than codifies common law misappropriation … and lies where the plaintiff can show that another 'knowingly' used his or her 'name, ... photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without [the plaintiff's] prior consent." *Montana v. San Jose Mercury News, Inc*., 34 Cal. App. 4th 790, 794 (1995)

Here, Plaintiffs have plead that Defendant used Class Members' identity in the form of their photographs harvested from social media sites, and Class Members' names from public records and Class Members' personal information, criminal history, and credit history, gleaned from public records and elsewhere; (2) Defendants' used Class Members' names and likenesses to defendants' advantage because defendants sold files identified by Class Members' names containing Class Members' photos and personal information, criminal, and credit history to third parties for money that the third parties paid to defendant, and which resulted in financial gain to defendants; (3) Defendants did not have the consent of Class Members to use their names and likenesses; (4) Class Members were injured by third parties buying their likenesses and profiles for improper purposes and in the loss of their privacy, the potential sale of their likenesses and personal information to persons who could harm Class Members such as stalkers, as and Class Members' loss of potential jobs, rental housing, loans, and other benefits by defendants' improper sale of Class Members' likenesses and personal information.  This satisfies the common law tort of misappropriation of

likeness.   It also satisfies the statutory claim under Civil Code § 3344, because Plaintiffs have alleged that Defendants sold Class Members' photographs on Defendants' website for profit, and enticed third parties to purchase Class Members' consumer reports by displaying Class Members' photos and thereby demonstrating what content was available from Defendants' website.

### Conclusion

Plaintiffs respectfully request that the Court enter the Revised Proposed Judgment.   If the Court wishes to hold a further hearing on this Motion, counsel requests the hearing to take place after March 15, 2017.

DATED:  February 21, 2017                              COUNSELONE, PC


By  /s/ Justin Kachadoorian
Anthony J. Orshansky
Alexandria R. Kachadoorian
Justin Kachadoorian
Attorneys for Plaintiffs and the Class