ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
anthony@counselonegroup.com
ALEXANDRIA R. KACHADOORIAN, Cal. Bar. No. 240601
alexandria@counselonegroup.com
JUSTIN KACHADOORIAN, Cal. Bar No. 260356
justin@counselonegroup.com
COUNSELONE, P.C.
9301 Wilshire Boulevard, Suite 650
Beverly Hills, California 90210
Telephone: (310) 277-9945
Facsimile: (424) 277-3727

Attorneys for Plaintiffs JOHN HUEBNER and IRMIN LANGTON,
on behalf of themselves and others similarly situated

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HUEBNER and IRMIN LANGTON, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RADARIS, LLC, a Massachusetts limited liability company; RADARIS AMERICA, INC., a Delaware corporation; and EDGAR LOPIN, an individual, <br><br> Defendants. | Case No. 3:14-cv-04735-VC <br><br> [Assigned to the Honorable Vince Chhabria] <br><br> **[CLASS ACTION]** <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO EMERGENCY MOTION FILED BY ACCURACY CONSULTING LTD. AND BITSELLER EXPERT LTD.** |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1
BACKGROUND ........................................................................................................................ 2
   A. Plaintiffs Investigate the Claims, File the Complaint, and Serve Defendants. ................ 2
   B. The Boston Lawyers Contact Plaintiffs' Counsel and Purport to Represent Defendants. .... 2
   C. The Court Certifies the Class and Enters Default Judgment Including Injunctive Relief. ... 3
   D. Movants Accuracy and Bitseller Appear Via the Boston Lawyers. .................................. 4
   E. Accuracy Consulting Ltd. Is a Phantom Company. ......................................................... 4
   F. Movants Knew About This Lawsuit but Chose Not to Defend. ....................................... 5
ARGUMENT .............................................................................................................................. 6
   A. The Court's Injunction Applies to Bitseller and Accuracy under Rule 65 Because They Are in Inactive Concert or Participation with Defendants. ................................................ 6
   B. Bitseller and Accuracy Are Not Entitled to Relief under Rule 60(b). .............................. 8
   C. Bitseller and Accuracy Are Vicariously Liable for the Misconduct of Defendants. ........ 11
   D. Alternatively, Court Should Amend the Judgment to Add Accuracy and Bitseller. ........ 13
       1. Accuracy and Bitseller Are Successors to Radaris America and Radaris, LLC. ......... 14
       2. Accuracy and Bitseller Are Alter Egos of Defendants. .............................................. 15
CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ................................................................................................ 12

*ABS-CBN Corp. v. Ashby*,
   D. Ore. Case No. 3:14-cv-1285 (Aug. 8, 2014) ....................................................................... 7

*American Bullion, Inc. v. Regal Assets, LLC*,
   No. CV 14-01873 DDP, 2014 WL 7404597 (C.D. Cal., Dec. 30, 2014) ................................ 12

*Arista Records, Inc. v. Flea World, Inc.*,
   No. CIV.A. 03-2670(JBS), 2006 WL 842883 (D.N.J. Mar. 31, 2006) .................................. 12

*Arista Records, LLC v. Tkach*,
   122 F. Supp. 3d 32 (S.D.N.Y. 2015) ............................................................................... 6, 7, 8

*Community Dental Services v. Tani*,
   282 F. 3d 1164 (9th Cir. 2002) .................................................................................................. 9

*Disney Enterprises, Inc. v. Hotfile Corp.*,
   No. 11-20427-CIV, 2013 WL 6336286 (S.D. Fla., Sept. 20, 2013) ....................................... 12

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) .................................................................................................... 12

*Hubbard/Downing, Inc. v. Kevin Heath Enterprises*,
   No. 1:10-CV-1131-WSD, 2013 WL 12239523 (N.D. Ga., May 30, 2013) ............................. 8

*Jones v. Aero/Chem Corp.*,
   921 F.2d 875 (9th Cir. 1990) .................................................................................................... 9

*Latshaw v. Trainer Wortham & Co., Inc.*,
   452 F.3d 1097 (9th Cir. 2006) .................................................................................................. 9

*In re Levander*,
   180 F.3d 1114 (9th Cir.1999) ................................................................................................. 13

*Life Alert Emergency Response, Inc. v. Lifewatch, Inc.*,
   No. 2:08-CV-02184-CAS, 2014 WL 2115189 (C.D. Cal., May 19, 2014) ............................. 9

*Lions Gate Films Inc. v. Does*,
   214-cv-06033-MMM-AGR, 2014 WL 12580399 (C.D. Cal. Aug. 4, 2014) ........................... 7

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283 (Fed. Cir. 2012) ............................................................................................ 7, 8

*Oceans II, Inc. v. Skinnervision, Inc.*,
    2015 WL 4484208 (C.D. Cal. Jul. 20, 2015) .................................................................... 13

*Regal Knitwear Co. v. Nat'l Labor Relations Board*,
    324 U.S. 9 (1945) ................................................................................................................ 6

*Rosenthal v. MPC Computers, LLC*,
    493 F.Supp.2d 182 (D. Mass. 2007) ................................................................................ 12

*S. Cent. Bell Tel. Co. v. Constant*,
    304 F. Supp. 732 (E.D. La. 1969), aff'd, 437 F.2d 1207 (5th Cir. 1971) ................................ 7

*Shapiro, Bernstein & Co. v. H.L. Green Co.*,
    316 F.2d 304 (2d Cir. 1963) ............................................................................................... 12

*TCI Group Life Ins. Plan v. Knoebber*,
    244 F. 3d 691 (9th Cir. 2001) ......................................................................................... 8, 9

*The North Face Apparel Corp. v. Fujian Sharing Imp, & Exp. Ltd. Co.*,
    No. 10 Civ. 1630(AKH), slip op. 4–6 (S.D.N.Y. June 24, 2011) ............................................ 7

*UMG Recordings, Inc. v. Sinnott*,
    300 F. Supp. 2d 993 (E.D. Cal. 2004) .............................................................................. 12

*Woo-Ming v. California Dept. of Corrections*,
    166 F.3d 1219 (9th Cir. 1999) ............................................................................................ 9

**California Cases**

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523 (2000) ............................................................................................ 15

*Cleveland v. Johnson*,
    209 Cal. App. 4th 1315 (2012) ........................................................................................ 14

*McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*,
    89 Cal. App. 4th 746 (2001) ..................................................................................... 13, 14

*Wolf Metals Inc. v. Rand Pacific Sales, Inc.*,
    4 Cal.App.5th 698, 704 (2016) ................................................................................. 14, 15

**Federal Statutes**

Fair Credit Reporting Act, 15 U.S.C.
    § 1681, *et seq.*................................................................................................................ 10

**California Statutes**

Cal. Civ. Code
    §§ 2230, 2334, 2336, 2338 ............................................................................................. 13
    § 2332 ............................................................................................................................. 13

California Code of Civil Procedure
  § 187 ................................................................................................................................ 13

**INTRODUCTION**

Last year, this Court enjoined the website radaris.com from violating the privacy rights of millions of Americans. That injunction is currently being violated by two foreign actors (Movants Accuracy Consulting Ltd. and Bitseller Expert Limited) that are not qualified to do business in California or any U.S. state, and one of which (Accuracy) appears not to be organized under the laws of any country on Earth. Rule 65 of the Federal Rules of Civil Procedure extends this Court's injunction to anyone, including non-parties, who is in active concert or participation with Defendants. By Movants' own admission, they own and operate the website responsible for the myriad violations the Court has sought to remedy. Therefore Movants must comply with the Court's order or be held in contempt.

The Court should deny Movants' unclear request for relief. Movants claim they are not parties herein, in which case they cannot contest the judgment under Fed. R. Civ. P. 60. Their due process argument completely ignores Rule 65(d)(2)(C), under which courts have always had the power to bind non-parties who assist in violating a court's order. The only thing that is clear from Movants' brief is that they wants radaris.com back in their control, but they have failed to articulate any legal grounds justifying that request, which the Court should deny for the following reasons.

First, Movants are subject to the Court's injunction even though they are non-parties because they are in active concert or participation with Defendants by operating radaris.com. Second, if Movants are parties, then they fail to satisfy any of the factors under Rule 60(b) for relief from the judgment. Movants knew about this action for almost four years because their attorneys—the Boston Law Group—initially purported to represent Defendants herein, even going so far as to request that the parties mediate with a federal magistrate judge. Movants made a strategic decision to sit on their hands while this case proceeded to judgment, and the Court should not permit them to profit from that choice now to prejudice of Plaintiffs and the class. Third, Movants are bound by the Court's judgment because they are vicariously liable for the acts of Defendants as their purported agents. Movants do not disclaim any affiliation with Defendants, and indeed acknowledge that they work in concert with at least one of the Defendants to promote the offending website. Movants were on notice through their agents of the claims made against radaris.com and

cannot feign ignorance now that the Court's injunction has been enforced. Fourth, to the extent that the Court finds that Movants are not otherwise subject to the Court's injunction, Plaintiffs respectfully request that the Court amend the judgment under Fed. R. Civ. P. 69 to add them as judgment debtors because in effect the share the same identity as Defendants.

For the reasons discussed in this brief, the Court's should deny Movant's request to return control of the domain name radaris.com to them.

## BACKGROUND

This case involves the benighted website appearing at the domain name radaris.com (and related domain names). The website posts private, sensitive, and often erroneous information about virtually anyone in the United States in disregard for state and federal privacy laws.

**A.    Plaintiffs Investigate the Claims, File the Complaint, and Serve Defendants.**

Class Counsel began investigating radaris.com in the fall of 2013, and on December 14, 2013, they posted a website (radarisclassactionlawsuit.com) inquiring of the public about their experiences with radaris.com. (Kachadoorian Decl. ¶ 3.) In March 2014, Plaintiffs retained Class Counsel to prosecute this class action, and on May 27, 2014, Plaintiffs sent letters to Radaris America, Inc. and Edgar Lopin. Plaintiffs received no response to these letters. (*Id.* at ¶ 4.)

On April 29, 2014, an action was filed against Radaris America, Inc., Radaris, LLC, and Edgar Lopin in Los Angeles County Superior Court titled *Doe v. Radaris, LLC, et al.*, Case No. NC544146. The summons and complaint in that action were drop served on the defendants' agent, "who refused to accept service of process." (Kachadoorian Decl., Ex. A.)

Plaintiffs served Radaris America, Inc., through personal service in November 2014, but it failed to file a responsive pleading, and the clerk entered its default. [Dkt. No. 22.] Defendants Radaris, LLC and Edgar Lopin ("Lopin") refused to accept service by personal service through a process server or service by certified mail and waiver, and Plaintiffs thereafter effectuated service on Radaris LLC and Lopin by publication. [Dkt. Nos. 27, 28, 32.]

**B.    The Boston Lawyers Contact Plaintiffs' Counsel and Purport to Represent Defendants.**

In February 2015, after Radaris America's default and while Plaintiffs were still attempting to serve Radaris, LLC and Lopin, Plaintiffs were contacted by attorneys, the Boston Law Group,

located in Boston, purportedly representing all three Defendants.  (Kachadoorian Decl. ¶ 6.)  The attorneys requested an extension of time to respond to the Complaint.  (*Id.*)  They also advised that Defendants wanted to mediate the case, and engaged in discussions regarding the place for mediation and potential mediators:  *"Our client has agreed to mediate this case in Boston in May, preferably before a US Magistrate Judge.  Please let us know if this is acceptable to you and we will begin preparations."*  (*Id.*)

Class counsel notified the Boston attorneys of the first Case Management Conference ("CMC"), and Plaintiffs sent them the Case Management Statement and arranged for their telephonic participation at the CMC.  (*Id.* at ¶ 7.)  On March 31, 2015, the morning of the CMC, the Boston attorneys advised that they would not appear on Defendants' behalf in this matter.  (*Id.*)  They explained that while they believed the Boston Law Group was being retained, Defendants were rethinking the costs involved in defending the action, but might still be agreeable to mediation in Boston.  (*Id.* at ¶ 8.)  When Plaintiffs inquired whether the Boston Law Group could accept service of process on April 3, 2015, the attorneys completely changed position.  (*Id.* at ¶ 9.)  The Boston Law Group suddenly claimed that they had not been retained, but had only represented Defendants in the past, that they had no way to presently contact Defendants, and that they were not authorized to accept service of process, though they somehow knew that Lopin may be in Russia.  (*Id.*)

**C.     The Court Certifies the Class and Enters Default Judgment Including Injunctive Relief**

After extensive briefing and hearings [Dkt. Nos. 37, 39, 46, 47, 49, 51], and a classwide notice campaign [Dkt. Nos. 43-45], this Court certified this action as a class action and granted Plaintiffs' motion for a default judgment.  [Dkt. No. 42, 43, 53, 54.]  The Court's Order and Judgment, entered on June 19, 2017, requires "Defendants, Defendants' officers, agents, servants, employees, *and all other persons in active concert or participation with any of them*, or third parties providing services used in connection with Defendants' operations who receive actual notice of this Order … *to cease hosting, using, linking to, transferring, selling, facilitating access to, exercising control over, or otherwise owning the domain name radaris.com*, radaris.net, radaris.us, radaris.biz, radaris.info, radaris.org, trustoria.com, and all other websites that display, publish, or disseminate information" about class members.  [Dkt. No. 52, at ¶ 5.a (emphasis added).]

3

On February 14, 2018, class counsel sent a letter and email to euroDNS, which is the former domain name registrar for radaris.com, requesting compliance with the Court's Order and Judgment. (Kachdoorian Decl. ¶ 11.) EuroDNS refused to comply. (*Id.*, Ex. C.) Thereafter class counsel requested Verisign, Inc., a U.S. company that is the official operator of the .com registry, to change the registrar of record from euroDNS to GoDaddy, Inc., another U.S. company. (*Id.* at ¶ 13.) Verisign complied with the Court's order, and GoDaddy thereafter changed the registrant to Plaintiffs care of class counsel. (*Id.* at ¶ 14.) Pursuant to the Court's Order [Dkt. No. 52, at ¶ 5.c], Plaintiffs instituted a domain name redirection to http://radarisclassaction.com, whereon copies of this Order and other documents related to this case are displayed. (*Id.* at ¶ 15.)

### D. Movants Accuracy and Bitseller Appear Via the Boston Lawyers.

Movants Accuracy and Bitseller do not deny that they operate the offending website located at radaris.com, nor do they deny affiliation with Defendants herein, but nonetheless seek to undo the Court's Order. Pursuant to the Court's order on March 1, 2018 [Dkt. No. 55], class counsel met and conferred telephonically with Mr. Shayefar, counsel for Movants, to determine whether the issue could be resolved by stipulation. During the call Mr. Shayefar refused to accept service on behalf of his clients or otherwise engage with class counsel regarding the dispute. (Kachadoorian Decl., ¶ 16.). However, class counsel proposed suspending the redirect to radarisclassaction.com until the Court decides the instant motion, to which proposal Mr. Shayefar has agreed. (*Id.* at ¶ 17.)

### E. Accuracy Consulting Ltd. Is a Phantom Company.

Although Accuracy purports to be the owner of the domain name radaris.com, its locality of organization is a mystery. Indeed, unlike Bitseller, Accuracy proffers no declaration that it is organized under the laws of any U.S. state or foreign country. Accuracy keeps this a secret because it is not organized under the laws of any U.S. state or foreign country. It exists nowhere. For example, a search of the Department of Registrar of Companies and Official Receiver in Cyprus (where its registrant was purportedly located) does not list any companies called "Accuracy Consulting Ltd." The closest search result is for an "Accuracy Consult*ancy* Ltd.," which is identified as "Not Registered Organization." (Kachadoorian Decl. ¶ 19.)

Bitseller's injection into this lawsuit is a red herring. Bitseller does not purport to have ever

4

been the owner or registrant of radaris.com. Bitseller claims to be the "operator" of the website, but Bitseller does not explain what that means or how the Court's Order and Judgment deprives it of due process. Bitseller's declaration is vague to a fault, likely by design. It does not explain what relationship it has with Accuracy (e.g., partner, shareholder, joint venture, independent contractor) and why that status requires it to be named and served like a party.

**F.       Movants Knew About This Lawsuit but Chose Not to Defend.**

Accuracy is not a real company but simply another name for Radaris America, Radaris, LLC, and Lopin—all of whom were served with the summons and Complaint but chose not to default. Indeed, Accuracy is represented by the same counsel—Matthew Shayefar and the Boston Law Group—that contacted Plaintiffs' counsel three years ago to propose mediating the claims in this lawsuit with a federal magistrate judge. Mr. Shayefar was certainly aware of the allegations made by Plaintiffs regarding the website and domain name radaris.com and the fact that Plaintiffs sought classwide injunctive relief because Plaintiffs specifically made that request in the Complaint. (Compl., ¶¶ 7, 41, 96, 108, Prayer, ¶ E.)

Contrary to Movant's representation (Bitseller Decl. Dkt. No. 54-2, ¶¶ 6, 7), the domain name radaris.com was registered to Radaris and Radaris, LLC, in 2011. (*See* Kachadoorian Decl., Ex. E.) After that, the registrant became Humanbook, Inc., but listed the same address (831 Beacon Street, Suite 129, Newton Centre, Massachusetts 02459) and the same administrative contact (Gary Norden). In 2012 the registrant changed to "Media Network," again with Gary Norden as the administrative contact but a new address in the British Virgin Islands (P.O. Box 146, Road Town, Tortola, Virgin Islands (British)). At that same address, the registrant changed to "Site Administrator" in 2013 before changing to Edgar Lopin from at least December 2013 until June 2014. Edgar Lopin, of course, is a named party in this lawsuit and was duly served with the summons and Complaint.

On May 27, 2014, Plaintiffs sent a letter to Radaris America, Inc. and Mr. Lopin outlining their claims on behalf of the class. (Kachadoorian Decl. ¶ 4.) Shortly thereafter, on April 29, 2014, a separate action against Radaris was filed in California Superior Court. (Kachadoorian Decl., Ex. 5.) In June 2014, in response to these threatened and filed actions, radaris.com changed its registrant

to Tim Ostertag, but at the same address in the British Virgin Islands.  In May of 2015, to evade the reach of any U.S. judgment, Radaris changed its registrar of record from GoDaddy, which is based in the U.S., to euroDNS, which is based in Luxembourg.  As described above, euroDNS refused to comply with this Court's Order and Judgment.  (Kachadoorian Decl. ¶ 12.)

Edgar Lopin, Radaris, LLC, Radaris America, Inc., Tim Ostertag, Humanbook, Inc., Media Network, "Site Administrator", Accuracy Consulting Ltd.—all are synonyms for the same wrongdoer:  Radaris.  And of course, Plaintiffs named and served Radaris in this action many years ago.  Defendants and Movant formed a network of entities and individuals for the purpose of evading liability for wrongdoing committed on radaris.com.

**ARGUMENT**

**A.    The Court's Injunction Applies to Bitseller and Accuracy under Rule 65 Because They Are in Inactive Concert or Participation with Defendants.**

A court order may bind not only parties to a lawsuit but also "persons who are in active concert or participation" with the parties or the parties' officers, agents, servants, employees, and attorneys.  Fed. R. Civ. Pro. 65(d)(2)(C).  Rule 65(d)(2)(C) is based on the "venerable proposition" that "a person who knowingly assists a defendant in violation an injunction subjects himself to civil as well as criminal proceedings for contempt." *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 35 (S.D.N.Y. 2015) (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir.1930) (Hand, J.)); *see also Regal Knitwear Co. v. Nat'l Labor Relations Board*, 324 U.S. 9, 14 (1945) (observing that Rule 65(d) prevents defendants from carrying out prohibited acts through aiders and abettors that were not parties to the original proceeding).

In *Arista*, the plaintiffs obtained a TRO against the defendants "and any persons acting in concert or participation with them or third parties providing services used in connection with Defendants' operations" from, among other things, "'[u]sing, linking to, transferring, selling, exercising control over, or otherwise owning the domain names grooveshark.io or grooveshark.pw or any other domain name that incorporates, in whole or in part, any of Grooveshark Marks'" and from "'[d]irectly or secondarily infringing Plaintiffs' copyrighted sound recordings via the [Defendants' service] or any variations thereof.'" *Arista* at 33-34.  The plaintiffs discovered that a company named CloudFlare was providing services to domains owned by the defendants.  *Id.* at 34

("Defendants have engaged CloudFlare to convert the domain name into the IP address for the website associated with that domain name so that the user can connect to the website they are trying to reach."). When the plaintiffs served CloudFlare with the TRO directing it to stop providing services to the defendants, CloudFlare refused to comply. *Id.* But the district court ruled that CloudFlare was disobeying the TRO. *Id.* at 36-37. By providing services to the defendants that enabled users to connect to their website, CloudFlare was acting "in concert or participation" with the defendants. *Id.* (citing cases). The district court reached this holding even though CloudFlare's services were automated and CloudFlare lacked any motive to help the defendants violate the injunction. *See also The North Face Apparel Corp. v. Fujian Sharing Imp, & Exp. Ltd. Co.*, No. 10 Civ. 1630(AKH), slip op. 4–6 (S.D.N.Y. June 24, 2011) ("Public Interest Registry, for example, cannot continue to make the connections that enable customers attracted to defendants' websites to access those websites."); *S. Cent. Bell Tel. Co. v. Constant*, 304 F. Supp. 732, 733-34 (E.D. La. 1969), aff'd, 437 F.2d 1207 (5th Cir. 1971) (holding that telephone company was required not to route calls to moving company subject to trademark injunction in prior action); *Lions Gate Films Inc. v. Does*, 214-cv-06033-MMM-AGR, 2014 WL 12580399, at *2 (C.D. Cal. Aug. 4, 2014); *ABS-CBN Corp. v. Ashby*, D. Ore. Case No. 3:14-cv-1285 (Aug. 8, 2014).

Courts regularly extend their injunctions to non-parties that engage in the same business as the defendants and their participation suggests an effort to evade the court's order. For example, in *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283 (Fed. Cir. 2012), the Federal Circuit held a non-party company in contempt of the court's injunction, entered as part of a default judgment, because the company was part of an "interrelated web of agreements and intermediaries" that created the enjoined production of veterinary pharmaceuticals. *Id.* at 1290. Indeed the court in *Merial* rejected the argument, raised also by Movants here, that the non-parties' rights had been violated because they had not "received a full and fair opportunity to litigate various issues," *id.* at 1300, because before entering the default judgment the district court had considered whether the disputed product infringed the plaintiff's patent. *Id.* at 1300-1301. The Federal Circuit affirmed the district court's order where the network of relationships between the parties and non-parties was "designed to obfuscate illicit and intentional concerted action rather than as bona fide, constructive business

arrangements." *Id.* at 1305. *See id.* ("Clever lawyers cannot shield the true substance of the contumacious conduct, no matter how many different entities attempt to launder [defendant's] fingerprints off the product.") (quoting the district court's contempt order).

Similarly, in *Hubbard/Downing, Inc. v. Kevin Heath Enterprises*, No. 1:10-CV-1131-WSD, 2013 WL 12239523 (N.D. Ga., May 30, 2013), at *9, the court applied an injunction against non-parties to the lawsuit under Rule 65(d)(2)(c) where the non-party engaged in the same business activity as the enjoined party and involved the same personnel and physical space, and its creation suggested an attempt to avoid liability.

Just as in *Arista*, the injunction here binds persons that are in active concert or participation with Defendants in connect with radaris.com. In fact, the language of the injunction mirrors the language of the TRO entered in *Arista*, as well as the language of injunctions in numerous judgments entered by other district courts. The entire thrust of the injunction is to terminate the illegal conduct occurring on radaris.com, which is the centerpiece of this dispute. Defendants/Movants have created a network of entities with similar names, personnel, locations, and attorneys, with the objective of operating radaris.com for illicit purpose. They all share that same digital space and conduct the same business through it (i.e., sale of consumer reports). Movants do not deny affiliation with Defendants here. Moreover, the facts described above suggest that various entities were created, relocated, and changed registrars specifically to avoid liability. And this deception continues with the instant motion. The wrongdoers continue to obscure their identities (who or what is Accuracy Consulting Ltd.?), and even their attorneys refuse to accept service of process. As in *Merial*, the Court considered extensive briefing and argument before finding that radaris.com violated state and federal privacy laws and enter the default judgment, and that ruling should not be set aside merely because cloaked entities who avowedly operate the same website and engage in the same illicit business as Defendants bandy about terms like due process.

**B.    Bitseller and Accuracy Are Not Entitled to Relief under Rule 60(b).**

"Rule 60(b)(1). . .grants district courts discretion to relieve a party from a judgment or order for reason of 'mistake, inadvertence, surprise, or excusable neglect.'" *TCI Group Life Ins. Plan v. Knoebber*, 244 F. 3d 691, 695 (9th Cir. 2001) (citations omitted). Factors considered include:

"whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff." *Id.* "Rule 60(b)(1) is not intended to remedy the effects of a litigation decision that a party later comes to regret through subsequently-gained knowledge that corrects the erroneous legal advice of counsel." *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1101 (9th Cir. 2006). "Under Rule 60(b)(3), the movant must (1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct. (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878–879 (9th Cir. 1990). "To obtain relief under Rule 60(b)(3), the moving party must show 'extraordinary circumstances.'" *Woo-Ming v. California Dept. of Corrections*, 166 F.3d 1219 (citation omitted) (9th Cir. 1999). "'Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.'" *Life Alert Emergency Response, Inc. v. Lifewatch, Inc.*, No. 2:08-CV-02184-CAS, 2014 WL 2115189, at *1-3 (C.D. Cal., May 19, 2014) (judgment not void where "defendant's default was caused by its culpable conduct" and "***even if defendant was not properly served, defendant concedes that it received actual notice of this action. [] Because defendant received actual notice, the constitutional guarantee of due process was satisfied***") (citation omitted) (emphasis added)). A "party merits relief under Rule 60(b)(6) if he demonstrates 'extraordinary circumstances which prevented or rendered him unable to prosecute[his case]' …. ***The party must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion***." *Community Dental Services v. Tani*, 282 F. 3d 1164, 1168 (9th Cir. 2002) (citations omitted; emphasis added).

     First of all, Rule 60 only applies to parties to an action, and Movants claim not to be parties. Therefore their request for relief under Rule 60 is confusing. They cannot contest the judgment with regard to Defendants, who were all properly served in this action, so it is unclear how they can be relieved of a judgment that pertains to Defendants. Although the judgment may also affect Movants, as discussed in the previous section, that does not mean the Court's judgment cannot bind them

9

1  under Rule 65. Quite the contrary. If Movants are parties to this action by virtual identity to
2  Defendants as discussed throughout this brief, then they present no convincing grounds for relief
3  under the Rule 60(b)(1) factors. First, the default resulted from the intentional conduct of
4  Defendants and those entities and individuals affiliated with them. Defendants were served and had
5  counsel, who contacted Plaintiffs and attempted to extend the response deadline and mediate the
6  action. Defendants subsequently released their counsel and refused to defend the action. Second,
7  there is no meritorious defense to the action. Bitseller and Accuracy have not suggested any defense,
8  nor is there one. The fact is that the radaris.com website operates as a consumer reporting agency
9  and investigative consumer reporting agency and, as discussed in detail in Plaintiffs' motion for
10 default judgment [Dkt No. 46] and supplemental brief in response to order re further briefing [Dkt
11 No. 49], its activities are subject to and are in violation of the federal Fair Credit Reporting Act, 15
12 U.S.C. § 1681, *et seq.* ("FCRA") and California's Investigative Consumer Reporting Agencies Act
13 ("ICRAA"), and also are engaged in misappropriation of likeness under California law. Third,
14 reopening the judgment would prejudice Plaintiffs. Defendants, as well as Bitseller and Accuracy,
15 have been aware of Plaintiff's claims since 2014, yet have done nothing. Plaintiffs have filed
16 extensive briefing on class certification and liability, all of which Defendants and Movants had
17 access to and could have responded to, but did not do so. Plaintiffs would be prejudiced by having
18 to re-litigate nearly three and a half years of litigation at tremendous time and expense so that
19 Defendants, in the guise of Bitseller and Accuracy, can further attempt to evade judgment.
20 Moreover, Plaintiffs and the entire class will continue to be prejudiced because their information
21 and photographs continue to be posted on radaris.com.

22         The requirements for relief under Rule 60(b)(3) are not satisfied. Plaintiffs did not engage
23 in any fraud, misrepresentation, or omission. The assertions of Bitseller and Accuracy in this regard
24 are false and defamatory. Plaintiffs served Radaris America by personal service, and engaged in
25 discussions with its counsel. Radaris, LLC and Lopin evaded service and were served by publication
26 notice, although they had actual notice of the action as they are the same entities as Radaris America.
27 Bitseller and Accuracy do not dispute these facts. Nor do Bitseller and Accuracy dispute the conduct
28 underlying the judgment. Plaintiffs made no misrepresentations or omissions regarding the tangled

ownership and operation of the domain name. Bitseller and Accuracy do not and cannot present any evidence, let alone clear and convincing evidence, of any wrongdoing by Plaintiffs. Moreover, there is no conduct by Plaintiffs that prevented Bitseller and Accuracy or any Defendant from fully and fairly presenting a defense. Bitseller and Accuracy knew the radaris.com domain name was at issue in the action and nothing Plaintiffs did prevented them from disputing ownership of the domain name at any point in this action or contesting the underlying claims.

The judgment also is not void. First of all, the judgment indisputably is valid and not void as to Radaris America, Radaris, LLC, and Lopin. Second, the judgment is not void as to Bitseller and Accuracy to the extent they seek to continue to operate their website in violation of federal and California law. As discussed above, Bitseller and Accuracy had actual notice of the action and the claims and relief sought against the radaris.com website. While they assert they had no obligation to defend the action, they had notice that what they allege is their property was at stake. Moreover, only Accuracy ever was listed as registrant (not necessarily the owner), and it is not a valid corporation, and was not valid at the time the default judgment was entered in June 1017. So there was no violation of due process.

Finally, there are no extraordinary circumstances beyond the control of Defendants, Bitseller, or Accuracy that prevented them from defending the action. These entities and individuals were fully aware of this action and the potential exposure, yet chose to do nothing to defend it. Defendants had counsel at the inception of this action, the same counsel now representing Movants, who sought additional time to respond to the Complaint, sought to participate in the initial case management conference, and sought mediation of the action, then broke off discussion. Defendants, Accuracy, and Bitseller were aware of the relief that was being sought. There were no barriers to them protecting their interests at any time from 2014 onward; they simply chose not to believe that Plaintiffs would follow through. This does not entitle them to relief from default. Moreover, because the Bitseller and Accuracy were culpable in allowing the default, they have no grounds for relief under any provision of Rule 60(b).

**C.  Bitseller and Accuracy Are Vicariously Liable for the Misconduct of Defendants.**

Bitseller and Accuracy are vicariously liable for the violations perpetrated through

11

radaris.com. To establish vicarious liability, a plaintiff must establish that the defendant "1) had the right and ability to supervise or control the infringing vendors, and 2) obtained a financial benefit from the infringing vendors." *UMG Recordings, Inc. v. Sinnott*, 300 F. Supp. 2d 993, 1001 (E.D. Cal. 2004) (imposing vicarious liability on flea market owner); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) (same); *Arista Records, Inc. v. Flea World, Inc.*, No. CIV.A. 03-2670(JBS), 2006 WL 842883, at *9 (D.N.J. Mar. 31, 2006) (same). "'[V]icarious liability is based on the defendant's failure to cause a third party to stop its directly infringing activities' . . . the doctrine does not require knowledge of the infringement and may be applied even where the defendant has acted in good faith to prevent it." *Disney Enterprises, Inc. v. Hotfile Corp.*, No. 11-20427-CIV, 2013 WL 6336286, at *38-41 (S.D. Fla., Sept. 20, 2013) ("Hotfile may contend that infringement was not central to its success, but it is undeniable that it financially benefitted from it by attracting some users" and "Hotfile controls the means of infringement") (citations omitted); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262-64 (9th Cir. 1996) (defendant "had the ability to control the activities of vendors on the premises" and "reap substantial financial benefits ... which flow directly from customers who want to buy the counterfeit recordings"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001)(imposing vicarious liability); *Rosenthal v. MPC Computers, LLC*, 493 F.Supp.2d 182, 189 (D. Mass. 2007) (imposing vicarious liability). "The defendant's knowledge of the infringing activity is not an element of vicarious liability .... Moreover, a party with the ability to supervise or control infringing activity cannot avoid liability by failing to exercise such supervision or control." *Arista Records*, 2006 WL 842883, at *9 (citation omitted). Bitseller and Accuracy are vicariously liable for the misconduct of the Radaris entities and Lopin with respect to the operation of radaris.com. Bitseller and Accuracy assert that they control radaris.com and that they derive a direct financial benefit from selling consumer reports on radaris.com in violation of state and federal law. *See* Emergency Motion at 7:3-7.

Bitseller and Accuracy also are liable under a theory of principal-agent liability. "[P]rincipals may be liable for their agents' negligent actions within the scope of the agency, as well as for certain other, intentional acts, even those outside the scope of the agency, that are subsequently ratified by the principal" including intentional acts. *American Bullion, Inc. v. Regal Assets, LLC*,

No. CV 14-01873 DDP, 2014 WL 7404597, at *3–4 (C.D. Cal., Dec. 30, 2014). "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." Cal. Civ. Code § 2332; *see also* Cal. Civ. Code §§ 2230, 2334, 2336, 2338. Bitseller and Accuracy assert that they own radaris.com, but that Radaris America, Radaris, LLC, and/or Lopin performed other functions for the website. Importantly, Movants do not disclaim any affiliation with Defendants but confirm that Defendants are engaged in the same business as are Movants: generating revenue from radaris.com. Essentially, Bitseller and Accuracy are asserting that they are the principals of radaris.com and Radaris America and Radaris, LLC their agents. However, Bitseller and Accuracy cannot hide behind such a shield and are liable for their agents' misconduct. Furthermore, any notice of the claims alleged herein made to Defendants is imputable to Movants based on agency principles. Even if Plaintiffs were unaware that the Radaris entities and Lopin were agents, because they had authority to and did operate radaris.com as if they were the principals and because their misconduct was in the course of operating radaris.com for the financial benefit of Bitseller and Accuracy, Movants are bound by their agents' actions.

### D. **Alternatively, Court Should Amend the Judgment to Add Accuracy and Bitseller.**

If the Court is not inclined to hold Accuracy and Bitseller bound by the injunction as to radaris.com based upon the foregoing, then Plaintiffs request that the Court amend the judgment to add Accuracy and Bitseller. Federal Rule of Civil Procedure 69(a) federal courts to rely on state law to add judgment-debtors. *Oceans II, Inc. v. Skinnervision, Inc.*, 2015 WL 4484208, at *4-5 (C.D. Cal. Jul. 20, 2015) (quoting *In re Levander*, 180 F.3d 1114, 1120–21 (9th Cir.1999)). Under California Code of Civil Procedure section 187 the trial court may amend the judgment to add a new defendant. Section 187 is premised on the notion that the amendment "is merely inserting the correct name of the real defendant," such that adding a party to a judgment after the fact does not present due process concerns. *In re Levander*, 180 F.3d 1114, 1121-1122 (9th Cir. 1999). "The doctrine of disregarding the corporate entity in appropriate situations is not that narrowly drawn." *McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 89 Cal. App. 4th 746, 753 (2001). Rather, the doctrine may be applied broadly to limit corporations that abuse the corporate form "to perpetrate

fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." *Id.* Consequently, the court may use "any suitable process or mode of proceeding" to resolve the issue. *Id.* at 755. Two common processes to add new defendants are successor liability and alter ego. *Id.*

### 1. Accuracy and Bitseller Are Successors to Radaris America and Radaris, LLC.

"Modification of a judgment may also be proper under the 'successor corporation' theory." *Wolf Metals Inc. v. Rand Pacific Sales, Inc.*, 4 Cal.App.5th 698, 704 (2016) (citation omitted). "[W]hen a corporation sells or transfers all of its assets to another corporation constituting its 'mere continuation,' the latter is also liable for the former's debts and liabilities." *Id.* at 704-05 (citation omitted); *McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 89 Cal. App. 4th 746, 753, 755-56 (2001) (finding successor liability). Successor liability exists where there is either "(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations." *Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1327, 1334 (2012) (finding successor liability) (citation omitted). Here, Accuracy/Bitseller are liable as successor corporations. First, they are mere continuations of Radaris America and Radaris, LLC. They hold the sole money generating asset of their predecessors—the radaris.com website. Radaris and Radaris, LLC were the registrants for radaris.com for a number of years, after which it was Humanbook, at the same location as Radaris in Massachusetts, and then Edgar Lopin. (Bitseller was never a registrant of radaris.com.) Tim Ostertag of Accuracy did not become the registrant until September 2014, after the demand letters in this action were sent to Radaris and Lopin in May 2014, and after a similar action was filed against the Radaris entities in Los Angeles in April 2014. Accuracy has no United States address or agent for service of process. ICANN WhoIs lists a Cyprus address but Accuracy is not organized under Cyprus law or registered in Cyprus. Accuracy is not a valid corporation in any jurisdiction. Accuracy is simply a shell corporation that the same principals operating the radaris.com used to absorb their asset when litigation threatened it. Accuracy is simply a continuation of Radaris America and Radaris LLC by another name. Second, Accuracy and Bitseller exist to escape liability for the violations perpetrated through radaris.com and to defraud judgment creditors.

### 2. Accuracy and Bitseller Are Alter Egos of Defendants.

"Modification of a judgment may be proper when the newly-named defendant is an existing defendant's alter ego." *Wolf Metals*, 4 Cal. App. 5th at 703 (citation omitted). "Under the alter ego doctrine, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners. The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds*." Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000) (citation omitted). Accuracy is just Radaris by another name and has changed hand only superficially so as to avoid the jurisdiction of U.S. courts or the reach of a U.S. judgment. The differently named entities all operated at the same addresses (e.g., 831 Beacon Street, Ste 129, Newton Center, MA 02459), had the same constellations of personnel (e.g., Edgar Lopin, Tim Ostertag), engaged in the same business (i.e., sale of consumer reports through radaris.com), and had the same attorneys (i.e., the Boston lawyers). Radaris cancelled entities like Radaris, LLC and changed registrants and registrars in response to actual and threatened litigation. And the most recent iteration of them—Accuracy Consulting Ltd.—does not even exist and is not qualified to do business in the U.S. These facts demonstrate alter ego liability.

To the extent the Court believes a greater factual record is needed to conclude that Bitseller an Accuracy are alter egos or successor corporations, Plaintiffs request discovery of both entities to elicit evidence regarding these issues. To that end, Plaintiffs request that the Court order that such discovery, as well as all process, may be served on Movant's attorneys herein.

### CONCLUSION

Based on the forgoing, the motion for emergency relief should be denied.

Respectfully submitted,

DATED:   March 8, 2018   COUNSELONE, PC

By   */s/ Alexandria Kachadoorian*
Anthony J. Orshansky
Alexandria Kachadoorian
Justin Kachadoorian
Attorneys for Plaintiffs and the Class